JOHN· W. McKIM, Judge of Probate, *vs.* ALONZO D. HIBBARD,
executor.

Suffolk.    March 8. — Sept. 16, 1886.    W. ALLEN & HOLMES, JJ., absent.

A trustee under a will filed an inventory in the Probate Court, in which certain
shares of stock in a corporation were valued at a certain sum.  Subsequently he
wrongfully sold the shares, and converted the proceeds to his own use.  In an
action against a surety on his bond, it appeared that the market value of the
shares on the day the same were transferred on the books of the corporation
was less than the valuation in the inventory; but it did not appear what the
market value was on the day they were sold, or what amount the trustee received
for them.   *Held*, that the trustee could· not object to being charged with the
valuation in the inventory.

A trustee under a will, which gave him the power to sell and dispose of the trust
estate, and to reinvest the proceeds, from time to time, as he should deem ad-
visable, filed an inventory in the Probate Court, in which certain shares of stock
in a corporation were valued at a certain sum.   He then sold the shares for the
purpose of converting them to his own use, and appropriated the proceeds.   In
his subsequent accounts he represented the shares as in his possession.  *Held*, in
an action on his bond, that a surety thereon could not object to being charged
with the market value of the shares at the date of the writ, with all dividends
declared thereon to that time.

A testator, by his will, gave certain property in trust for the benefit of two
children; and provided that, during their minority, interest was to be added to
the principal, and that, after that period, each child was entitled to the income
of his portion, and, under certain circumstances, to the principal or a part
thereof.   When the elder child became of age, the trustee rendered an account
of the property held by him for the benefit of both children, including accumu-
lations to a certain amount; and, two years and a half afterwards, a settlement
was made between the trustee and the elder child on the basis of this account,
and the income of his proportionate share, with its proportionate accumulation,
from the date of his majority to the date of the settlement, was paid to him, to-
gether with a certain sum out of his share of the principal as accumulated.
In fact, the trustee had before these settlements wrongfully sold and appro-
priated all of the trust property.   *Held*, in an action against a surety on the
trustee's bond, that the surety was chargeable with interest upon the elder
child's share of the principal, with its share of added accumulation from the
date of his majority to the date of the writ; and that a rest was properly made
as of the former date.   *Held, also*, that the surety was chargeable with interest
on the younger child's similar share from the date of the elder child's majority;
and that a rest should be made at the date of the younger child's majority,
which was before the date of the writ.

If a trustee misappropriates the trust property, and, in an action against a surety
on his bond, the surety is charged with the full amount of the trust property to
a period later than the misappropriation, a sum equal to commissions which the
trustee would have earned if the estate had been properly administered should
be deducted, and also the amount of taxes paid by the trustee, although they
were paid to conceal his embezzlement.

If a trustee sells securities belonging to the trust estate, and converts the proceeds to his own use, in an action against a surety on his bond interest should be computed on the amount converted from the day it is found to be due up to the day of issuing the execution, without making a rest at the date of the writ.

CONTRACT, against the executor of the will of William C. Hibbard, upon a probate bond, dated January 8, 1866, and executed by James W. Rollins as principal, and by Joseph R. Bassett and said Hibbard as sureties, in the sum of $30,000, and conditioned for the faithful performance by the principal of the duties of trustee under the will of Charles Barstow. The case was referred to an assessor, to whose report both parties took exceptions, which were heard before *C. Allen,* J.; and, at the request of the parties, the case was reserved for the determination of the full court. The facts appear in the opinion.

*I. R. Clark,* for the plaintiff.

*J. D. Ball,* for the defendant.

DEVENS, J. The trust estate of which James W. Rollins was trustee was intended for the benefit of three children, a daughter and two sons, of the testator, by whom it was originally created in equal proportions of one third part to each. The income was to be added to the principal until the marriage or majority of the daughter, who was the eldest of the children. Upon the marriage of the daughter or her majority, the proportion of the trust estate intended for her benefit, together with its proportion of the accumulated income, was to be held in trust for her benefit during life, and the income thereof paid to her quarterly. Upon the arrival of each of the sons, respectively, at majority, the trustee was authorized, with the approval of the testator's widow, to pay to each his proportionate one third of the trust estate, with its proportion of accumulated income. But if, in the opinion of the trustee and widow, if living, it would not be for the advantage of either of the sons to receive his proportion with its accumulation, the income thereof was to be paid to him during life, or until such time as, in the opinion of the trustee and the widow, if living, it would be for his best interest that he should receive his proportionate share, it being held in the mean time by the trustee. Upon the decease of each of the sons, the proportion of the trust estate held for his benefit was to be paid to his children, and, if he died leaving no

children, to his heirs at law. Upon the decease of the daughter, the proportion of the trust estate held for her benefit was to be paid to her children, and, if she died without children, was to be treated as a portion of the testator's residuary estate. The will contained an authority, by which, in case the provision made by the testator under another clause of his will for the maintenance and education of his children during their minority should prove insufficient, the income of the trust estate, directed to be accumulated, might be used for these purposes. Power was also given to the trustee to sell and dispose of the trust estate, and, with the proceeds, to purchase other property to be held upon the same trusts, and to change investments as, from time to time, he should deem it advisable.

On January 31, 1866, Rollins, as trustee, filed an inventory of the estate thus held in trust by him. The daughter, Anna D. Barstow, became of age on January 26, 1868, when the trustee, as he testified, set off to her "theoretically and in his mind," but without any actual division, a third of the trust estate. On December 6, 1869, he presented his first account, by which it appeared that no income had been paid to the sons since the commencement of his duties under the trust, but that there had been paid to the daughter, from income received after her majority, $849.88. The trustee rendered no subsequent account to the Probate Court, and, failing to comply with the order of the court in relation thereto, this suit was brought upon his bond, on November 30, 1881. No property was at that time held by him for the trust estate, and none has been delivered over by him to his successor, but certain amounts had been paid over from time to time by him to the different children, and accounts had been rendered to them severally, in which he represented himself as still holding in his hands the property, or a large portion of the property, as stated in the inventory returned to the Probate Court, except certain Concord Railroad shares, concerning the disposition of which no question now arises. All the trust property had been squandered by him in speculations as early as 1875, but the condition of the trust fund was not known until June, 1880.

Charles F. Barstow, the elder son, became of age on May 16, 1873, and on November 17, 1875, the trustee made up and

settled with him an account of the net income from the date of his majority, represented to have been realized on his share of the principal sum, with its accumulations from that date, paying him the same, together with $2000 of this principal, his mother approving the latter payment.

Henry T. Barstow, the younger son, became of age on November 11, 1879. In April, 1880, the trustee rendered to him an account based on that of May 16, 1873, (when Charles F. Barstow became of age,) purporting to show the net income on his share as it stood on May 16, 1873, and from that date the investment of principal and income, and reinvestments, as they stood in April, 1880, together with certain payments, &c. made.

The report of the assessor, included in the reservation of the case, gives fully the facts connected with the maladministration of this trust estate, and also the methods the assessor has adopted in determining the liabilities of the trustee. It will not be necessary to recapitulate them, except as we may do so in considering the exceptions thereto filed by the plaintiff and the defendant.

We consider those of the defendant, as those of the plaintiff may be incidentally dealt with.

1. The defendant objects that certain shares of the Philadelphia, Wilmington, and Baltimore Railroad, which were sold by the trustee, the proceeds being appropriated to his own use, have been charged to him as of their inventoried value, although it appears that their market value on July 10, 1871, when they were transferred on the books of the corporation, was $2.50 less on each share. The trustee wholly failed to show what he actually received for them, or when he sold them, and, in the absence of this evidence, the assessor was fully justified in holding him liable for the inventoried value. Where an actual loss properly sustained is shown, a trustee is not liable; but no such actual loss was shown, nor was the stock sold by the trustee in the discharge of any duty. Whatever the market price, he is properly chargeable with the inventoried value, certainly when he fails to show what he actually obtained. But while we have passed upon this question as presented by the exception, it is apparently not now of importance, if it shall be found that the

assessor correctly held that the trustee might be held responsible for the value of this stock as of the date of the writ.

2. The assessor has held, both as to the shares of the Philadelphia, Wilmington, and Baltimore Railroad, and other shares in certain railroad companies (except the Concord Railroad shares) which were included in the trustee's inventory, and which he has constantly represented in all accounts rendered by him as being in his possession, that the trustee is liable for the value of the same as that value was on November 30, 1881, the date of the writ; and, further, that the trustee is properly chargeable for all the dividends that were payable on the same up to that time. The defendant contends, by his second and third exceptions, that he can only be held liable for the market value of the shares when they were sold by the trustee, together with interest from that time, and for such dividends as were payable up to that time.

Under the power given by the will to the trustee, to sell and dispose of the trust property, to reinvest the proceeds, and to change investments as he might deem advisable, the defendant contends that the trustee should be charged with the market value of the stocks at the time of sale, with interest thereon, as the wrong done consisted, not in the sale, which might lawfully have been made, but in the misappropriation of the proceeds. If the trustee had sold the securities for the honest purpose of reinvesting the proceeds, and subsequently, yielding to temptation, had misappropriated the funds, some force might be attributed to this argument. In *Fowle* v. *Ward*, 113 Mass. 548, it was held that, where one to whom shares had been pledged as collateral security sold them wrongfully, but for the full market price at the time, the plaintiff was entitled, on a bill in equity to redeem the shares, to be placed in the same position as if the sale had not been made; and that, if he could not replace them, the defendant might be charged with the value of the shares at the time of filing the bill. To the same effect are *Sewall* v. *Boston Water Power Co.* 4 Allen, 277, and *Emory* v. *Parrott*, 107 Mass. 95. The sales in each of the cases cited were wrongful and illegal, but they are not therefore distinguishable from those made by the trustee in the case at bar. These sales were equally wrongful and illegal; they were not a

part of an honest transaction, by which an investment of the trust estate was to be changed, but of a transaction by means of which the funds were to be misappropriated. The object of the sales is found to have been, not the execution of the trust reposed in Rollins by the testator, but an abuse of it. The assessor has found that Rollins sold the shares for the purpose of converting the same to his own use. He cannot shield himself from the consequences of a dishonest act under an authority conferred only to be exercised for an honest purpose. In the cases cited, as in that at bar, the party wrongfully selling had all the muniments of title, the means of selling, and of conveying a good title to an innocent purchaser. Were these shares now in the hands of Rollins, a conveyance of them to the present trustee might be compelled. As they are not there by reason of his own wrongful act, he and his sureties are properly held responsible for their value at the time when suit was brought, together with the value of the dividends which he might have received, and has heretofore pretended that he had received. The argument that, if this is so, and that, if shares sold under similar circumstances should be worth less at the date of the writ than their market value when sold, all that could be recovered would be the lesser value, is far from sound. The party injured may properly have the option of ratifying the sale wrongfully made, and receiving the proceeds of the same with interest, or of insisting upon the return of the shares of stock, with the dividends, into the trust estate, or, failing this, of receiving their value at the time of the suit brought. 2 Story Eq. Jur. § 1263.

3. On May 16, 1873, when Charles F. Barstow, the elder son, became of age, the trustee rendered an account of the trust property held by him for the benefit of the two sons, including accumulations, real or pretended, to the amount of $3148. This account treated the property which he had previously disposed of as still in his hands. On November 17, 1875, a settlement was made between the trustee and Charles F. on the basis of this account, and the income of his proportionate share, with its proportionate accumulation from May 16, 1873, the date of his majority, to November 17, 1875, was paid to him, together with $2000 out of his share of the principal as accumulated, with the approval of his mother. The defendant by his fourth exception

objects that, except where dividends have been charged, interest has been cast upon Charles F.'s share of the principal, with its share of added .accumulations from May 16, 1873; and that a rest was made as of that date. During the minority of each of the three children, except in certain cases not necessary now to be considered, interest was to be added to the principal. From and after that period, the beneficiary was entitled to the income of his or her portion, and, under certain circumstances, to the principal, or a part thereof. It was necessary to ascertain, at the time when Charles F. arrived at majority, what his share of the principal with the accumulations then was, and upon this, as a new principal, he was thereafter to receive interest or income. It was therefore correctly held by the assessor, that, except where the trustee was charged with dividends, he should be charged with interest thereon.

In this connection, it may be proper to deal with the defendant's sixth exception, which is, in substance, that the. settlement with Charles F. Barstow on February 16, 1876, which was on the same basis as that of November 17, 1875, already adverted to, and a previous one with Anna D. Barstow on January 27, 1873, were erroneously upheld by the assessor. Anna D. Barstow became of age in 1868, and the trustee "theoretically and in his mind set off to her" a certain share of the property. In 1869, he rendered a probate account, which was allowed, and he then had the trust property. The settlement with Anna D. of January 27, 1873, was a settlement of the income on her share from her majority to that time. The accounts then rendered were not treated by the assessor as conclusive, but as evidence. That there should be a rest, having relation to the time when each child became of age, that thereafter it might have the interest or income of the accumulated principal, we have already stated. The defendant contends that the statements made by the trustee in these settlements were false; that he had disposed of all the trust property at the time; and that therefore they should be disregarded. These statements were made by the trustee in the discharge of his duty, and they do not embrace more than the trustee was bound to account for in the way of interest or dividends, and by them the sureties must be bound. *McKim* v. *Blake*, 139 Mass. 593. Apparently, if these settlements were

wholly set aside, and the trustee's charges and commissions disallowed, as in such case they should be, simple interest on the principal sums, with the gains made on the sales added, would exceed what was settled for as income realized. We see no reason for disturbing them. According to the accounts as rendered, accumulations had been added to principal in such a manner as was just and reasonable, or, more properly, in such a manner as would have been so, but for the fact that they were all based on the fiction that the trust property was in existence.

4. The fifth exception of the defendant is to the allowance of interest on Henry T. Barstow's share from May 16, 1873. The trustee on that date had made, rendered, and settled his account to that date with Charles F. Barstow. The account was made of the estate of both sons. It included the income, which from that time, so far as the share of the elder son was concerned, was to belong to him, while that of the younger was to be accumulated still, as his minority had not expired. Not only was no injustice done the trustee in compelling him to account for interest on this sum from that time, but, on this point, we think that the contention of the plaintiff is correct, and that, instead of computing the income from May 16, 1873, without a rest, one should be made on November 11, 1879, adding, at the date of Henry T.'s majority, the then accumulated interest; and that, in this respect, the report of the assessor should be modified.

We have already passed on the defendant's sixth exception; and his seventh exception was waived.

5. The defendant's eighth exception is to the failure to allow commissions, or a sum equal to commissions, to the trustee. If the defendant is to be charged with the property and the income, whether from interest or dividends, in full, there should be such deductions as would have been made if the estate had been properly administered. While commissions, *eo nomine*, have not been earned by the trustee, yet, as he is to be treated as if he had faithfully administered the trust, and is to be held to the fullest responsibility, a sum equal to them may properly be deducted. Up to the dates of the settlements made with Anna D. Barstow and with Charles F. Barstow, commissions are included in the settlements, as made with them. The trustee is not to be allowed in any form such deduction more than once, but his wrongful

conduct and acts of embezzlement and misappropriation should not enable the representatives of the estate he has abused to recover more than properly belongs to it, or compel the sureties to do more than indemnify the trust estate. For a similar reason, the trustee should be allowed for the taxes paid by him after 1875. They were undoubtedly paid wrongfully, to conceal and cover up the fraud he had committed, but they were a proper charge upon the trust estate, if it had actually existed; and, when the trustee is held responsible for the full income, they are, as against his sureties, a proper and necessary deduction therefrom.

6. The defendant, by his ninth exception, further contends that the assessor has erroneously computed interest up to the date of the writ, and then made a rest, whereas interest should have been computed and charged to the date of the execution, no rest being made at any previous time. This, the defendant urges, is in violation of the rule laid down in *McKim* v. *Blake*, *ubi supra*. The contention of the plaintiff in *McKim* v. *Blake* was, that interest upon the principal found by the assessor to be due should be computed to the date of the judgment, and the amount then due thus ascertained; and that interest on that amount should be computed therefrom to the day of issuing the execution. But it was held by the court, that interest on the amount converted by the trustee should be computed from the day the assessor found it to be due up to the day of issuing the execution, without any intervening rest. We do not understand from the assessor's report that he proposes to make a rest at the date of the writ, and then compute interest upon the sum found due at that time. As a matter of convenience, he has carried his computations of interest to the date of the writ, but his report contemplates that they should be carried to the date when execution is awarded. That they should be thus continued seems to us clear, as the trust estate can in no other way be indemnified. As further claim for dividends on the stock would cease at the date of the writ, when the plaintiff is to receive their value as of that time, there should be interest on this value from that date to that of issuing the execution, and the interest also on the sums of money which the trustee held, or should have held, should be continued up to that time, without making a rest at the date of the writ.

We have incidentally disposed of all the exceptions argued by the plaintiff in considering those presented by the defendant.

From any amount which the plaintiff would otherwise be entitled to recover, certain deductions are to be made by reason of payments since the suit was brought, but we have not thought it necessary to enter into the computations which will be required to determine the precise sum for which execution should issue, as we have fully indicated the rules according to which they should be made.

The result is, that we adopt the theory set forth by the assessor in settling the account of the trustee, with the following modifications:

1. That, in computing interest, a rest should be made in the account of Henry T. Barstow when he became of age, on November 11, 1879.

2. That the defendant should be allowed a sum equal to the usual commissions for services not included in the accounts rendered and settled by the trustee; such allowance to be as of the date of the writ.                     *Ordered accordingly.*