GILBERT P. SULLIVAN, administrator, *vs.* HELEN M. SULLI-
VAN & another.

Suffolk.  November 8, 1956. — January 10, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Executor and Administrator,* Accounting, Losses, Distribution, Compensa-
tion, Interest.  *Trust,* Resulting trust, Accounting by trustee.  *Real
Property,* Straw.  *Probate Court,* Accounts, Costs.  *Interest.*

In a proceeding in a Probate Court upon an account of a son as admin-
istrator of his father's estate, where it appeared that the son had held
real estate as a straw or on a resulting trust for the intestate and had
given the intestate a note and mortgage of the real estate which were
for the intestate's protection but did not represent any actual debt,
the son, although not required to account as administrator for the
amount of the note, must recognize the resulting trust and account
for the property held thereon, and, in the circumstances, should be
required to file in the Probate Court a separate account as such trustee
to be heard in combination with necessary further hearing on the ad-
ministrator's account in order to make applicable to the trustee's ac-
count the determination of such issues as had already been deter-
mined among the same parties in connection with the administrator's
account and thereby to avoid retrial of those issues.  [272–273]
An administrator who foreclosed a real estate mortgage included in his
inventory, bought in the property in his own name for an amount
equivalent to the fair value of the property, and conveyed the prop-
erty to one of the heirs at that value in distribution, and on whose
part there was "no negligence . . . in failing to collect" a "deficit"
consisting of the difference between that value and the greater inven-
tory value of the mortgage, was not chargeable in his account with such
"deficit"; the irregularity of taking title in his own name in the fore-
closure was immaterial.  [274]
A partly collected mortgage inventoried in an intestate's estate remained
beneficially an asset of the estate and should have been included in
Schedule C of the administrator's account although he, one of the
heirs, had assigned it to himself individually by an unrecorded assign-
ment not ratified by the other heirs and had entered under the mort-
gage and taken possession of the mortgaged property.  [274–275]
Statement of the principles governing the charging of interest to an ad-
ministrator who dealt with his intestate's estate informally and de-
layed substantially in distributing some of the shares, dependent on a
determination of various factors such as improper use of money of the

estate by him for his own purposes, acquiescence of the heirs in delays on his part, and the circumstances of his application of money of the estate to the support of certain heirs.   [277–279]

Statement as to the principles governing an award of compensation to an administrator.   [279–280]

Whether an award of costs and expenses to the contestants in a proceeding upon a contested administrator's account should be ordered paid by him personally or from the estate should be left to the Probate Court.   [280]

PETITION, filed in the Probate Court for the county of Suffolk on April 1, 1953, for allowance of the first and final account of the administrator of the estate of Thomas Sullivan, late of Boston.

The case was heard by *Mahoney,* J., on an auditor's report.

*Charles C. Craig,* for the respondents.

No argument nor brief for the petitioner.

CUTTER, J.   Thomas Sullivan died on March 7, 1930, leaving a widow, two daughters, the appellants Helen Sullivan and Mary Connelly, and two sons, Richard and Gilbert. Gilbert Sullivan, a member of the bar since 1928, was appointed administrator on April 18, 1930.   In 1931, he filed an inventory but did not present until 1953 his first and final account for the period beginning April 18, 1930, and ending May 8, 1931.   The two appellants objected to the account, which was referred to an auditor whose findings of fact were to be final.   Changes in the account reflecting the conclusions of the auditor (that the administrator should be charged with some relatively small balances due to the several next of kin) were made.   The account, as thus restated, was allowed.   The appellants appeal[1] from the decree allowing the restated account and from a further decree of the Probate Court awarding to the appellants $500 from the assets of the estate for costs and expenses in connection with the hearing on the account.

The case is here on the auditor's report, in effect a "case

---

[1] The administrator also claimed appeals but did not perfect them.   He filed no brief and made no argument in this court.   Although the appellants filed objections to the auditor's report, the report was not recommitted to the auditor and there is no appeal from the denial of a motion to recommit.

stated." *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108. *New England Gas & Electric Association* v. *Ocean Accident & Guarantee Corp. Ltd.* 330 Mass. 640, 644–645. The conclusions of fact of the auditor and of the probate judge by inference from the auditor's subsidiary findings are open to review and revision in this court as matter of fact. The facts hereafter stated are based on the auditor's findings.

At his death Thomas Sullivan had a total estate of about $45,000, consisting of cash and bank books of $14,871.89, collectible mortgages of $9,400 and interests (in dispute as to extent) in one other mortgage and three parcels of real estate. The cash and most bank accounts, as well as some bank and mortgage interest, were collected in 1930–1931, debts and taxes were paid and, after a distribution of $7,000 to Richard Sullivan, one of the next of kin, there should have been a cash balance of $8,510.35 on December 31, 1931. Thereafter the administration of the estate dragged, with mortgages being collected from time to time, in whole or in part, through 1937, when one foreclosed property was conveyed at a figure of $7,000 to the appellant Mary Connelly as a part distribution on account of her share of the estate. The estate was inactive until 1945, when property in Hull was sold, and thereafter again inactive until 1952, when property at 198 Westville Street, Dorchester, was conveyed to the appellant Helen Sullivan in part payment of her distributive share. According to the statement by the auditor of the cash receipts and disbursements of the estate from year to year, there should have been year-end cash balances ranging from $16,486.35 on December 31, 1933, to $23,441.35 on December 31, 1937, and $26,341.35 on December 31, 1945. Where these balances were kept by the administrator does not appear from the record. No such balances were in the estate's bank accounts.

At the time of Thomas Sullivan's death in 1930, his wife was living apart from him and he was living with his children, Mary Connelly (then unmarried), Helen, and Gilbert, the administrator, in a house at 92–94 Codman Hill Avenue.

The other son Richard was married and lived elsewhere. The widow joined the three children in the Codman Hill Avenue house in 1932 and lived there until her death[1] in 1946. Mrs. Connelly moved away at the time of her marriage in 1937 but Helen Sullivan still lives in the house with her brother and his wife. Gilbert was on close and friendly terms with his sisters at least until his own marriage in 1950. Although in 1937 Mrs. Connelly had a vigorous discussion with the administrator which led to the $7,000 partial distribution to her, this seems to have caused no major estrangement.

Against this background, the various issues presented on appeal can be considered.

1. In 1927 one Driscoll, at the intestate's direction, conveyed the Codman Hill Avenue property, without consideration paid by the grantee, to the intestate's son Gilbert, now the administrator. On the same day a $6,000 mortgage (subject to a first mortgage) was given by Gilbert to his father, the intestate, together with a note. The first mortgage and the $6,000 mortgage were replaced in 1929 respectively by a new first mortgage and a new $6,000 mortgage from Gilbert to the intestate.

When the intestate died, the administrator included this $6,000 mortgage in his inventory at $1,900, and in December, 1933, executed a still unrecorded discharge of the mortgage. Although the appellants claim the mortgage should have been included at its face value, the restated account has omitted all reference to the mortgage. The auditor ruled that the interests of the parties in the property are not a matter to be determined in these accounting proceedings and, accordingly, has made no finding as to the interests of the heirs and the widow in the property.

If the administrator had in fact been indebted to the estate, the debt would have been discharged by the ap-

---

[1] No letters of administration have been taken out on the mother's estate. The auditor states that when this was brought to their attention, the parties "agreed to go on without administration of their mother's estate as they were all her heirs and would succeed to her rights in the estate of Thomas Sullivan."

pointment and the administrator would have been treated as having had the benefit of the amount of the debt from that date. *Bassett* v. *Fidelity & Deposit Co.* 184 Mass. 210, 212–213. *Argus* v. *Kokkorou*, 308 Mass. 315, 318–320. Here, however, the auditor in effect has found (and his subsidiary findings warrant that conclusion) that there was no debt to the intestate, and that the administrator held as "straw" only, that is, in effect upon a resulting trust for the intestate. See *Collins* v. *Curtin*, 325 Mass. 123, 125. This resulting trust still continues so far as this record shows.

We cannot adopt the view of the auditor that this matter must be dealt with in a wholly separate equity proceeding. The mortgage note from Gilbert to the intestate was designed to protect the interest of the intestate in the real estate. The unrecorded discharge of the mortgage in 1933 removed one obstacle to Gilbert's dealing with the property as though no resulting trust existed. This note, as a protective precaution, was sufficiently an asset of the estate, even if not representing a real debt, to serve as a basis for requiring Gilbert to account for the intestate's interest in the real estate securing it. Gilbert cannot be permitted simultaneously to contend that the amount of the note is not to be included in the probate account as a collected debt and, at the same time, fail to recognize the resulting trust in real estate which the note protected. In connection with this proceeding, as a concomitant of recognition of non-liability to account as administrator for the amount of the note, he must account for the property held upon resulting trust.

The issues have been partly tried in a proceeding "to be considered to be for all purposes in equity" (*Cook* v. *Howe*, 280 Mass. 325, 329) in which all necessary parties to a petition for an accounting under the resulting trust are already before the court. The parties should not be put to unnecessary expense in retrying these issues in another proceeding if, upon this appeal, we can provide in some reasonable manner for an accounting for all the assets of the estate.

There is not enough in the present record to enable us to
state the account with respect to the real estate held upon
resulting trust and, in any event, an accounting for the real
estate is not appropriately an integral part of this probate
account. See G. L. (Ter. Ed.) c. 206, § 6; *Hodgkinson* v.
*Hodgkinson,* 281 Mass. 463, 466. However, in view of the
close relationship of the normal probate accounting to the
accounting under the resulting trust, Gilbert Sullivan must
now be required to file promptly in the Probate Court
(either on a special ·order of notice in this proceeding or
upon a new petition) an account as trustee under the result-
ing trust. When such an account is prepared, it can be
combined for hearing with the further proceedings on the
probate account, thereby facilitating recognition (in the
accounting under the resulting trust) of the relevant issues
of fact[1] which have been disposed of in the accounting here
reviewed. Action to this end will be taken, in such manner
consistent with this opinion as the probate judge may deter-
mine. No correction need be made in the restated probate
account with respect to the Codman Hill Avenue note.

The action thus directed is taken to avoid unnecessary
litigation of issues partly dealt with, as well as possible
circuity of action, in a manner consistent with the result in
*Cook* v. *Howe,* 280 Mass. 325, 328–331. That unusual case,
·in many respects, is very close on its facts to the present
one. There, although apparently with the consent of the
parties, in connection with an executor's probate account-
ing, it was directed that there be an accounting, *qua* execu-
tor, for the proceeds of real estate, which the executor had
held under resulting trust for his testatrix during the latter's

---

[1] While the auditor's finding that Gilbert Sullivan held as "straw" for the
intestate will be controlling in the real estate accounting, there will be other
issues which must be determined upon which no controlling findings have
been made. For example, Gilbert Sullivan, as trustee under the resulting
trust, may show, if he can, any agreements or actions of the heirs which affect
the terms of the resulting trust and may obtain appropriate credit for ex-
penditures made by him personally for repairs and taxes and other proper
expenses of maintenance of the Codman Hill Avenue house. He, of course,
must allow proper credit for contributions by other members of the family to
the expense of maintenance and taxes.

life. The real estate had been sold after the testatrix's death. A considerable point was made in *Cook* v. *Howe* of the fact that only the proceeds, personal property, need be dealt with in the proceeding. Chief Justice Rugg, at page 328 of the opinion, points out that, with exceptions not here pertinent, an executor (or an administrator) "has nothing to do with real estate" and that, therefore, "if the real estate had not been sold by the accountant as holder of the legal title, it would have no proper place in his account." However, any distinction between *Cook* v. *Howe* and the present case, based on the fact the real estate here has not yet been sold, seems more formal than substantive. On the facts here revealed, that distinction should not deter an equitable adjustment now of the separate account with respect to the resulting trust, using the evidence and findings, already available in this proceeding among the same parties, so far as feasible to expedite a determination. The same practical reasons which induced the decision in *Cook* v. *Howe* lead to the procedure here directed.

2. The administrator included in his inventory the so called Driscoll mortgage for $8,500 covering a lot on Washington Street, Dorchester. The administrator foreclosed this mortgage in 1937 and at the foreclosure sale bought the property in his own name for $7,000. The property, found to have a net value after liens of $7,000, was conveyed to the appellant Mary Connelly, as already stated. The auditor found that there was "no negligence on the part of the administrator in failing to collect the deficit of $1,500, or any part of it." This finding is consistent with the subsidiary findings. There is no basis for charging the administrator with this loss. The irregularity involved in taking title in his own name did not cause or contribute to any loss to the estate.

3. A mortgage from one Clark of $2,350 covering 212 Westville Street, Dorchester, appeared in the inventory. Nine hundred dollars was collected on account of the principal of the mortgage note prior to 1933, when the administrator assigned this mortgage to himself individually. The

assignment was not recorded. The administrator then made entry under the mortgage and, up to the date of the hearing, had been in possession, apparently without completing foreclosure. The auditor found "that this is an asset of the estate and should appear as such in schedule C" of the account. The probate judge in restating the account allowed as a loss the $1,450 remaining due on the mortgage. In the absence of any finding whether the Clark property had value at the time of the entry, we see on this record no basis for the allowance of such a loss (see *McKim* v. *Hibbard*, 142 Mass. 422, 425), although further hearing may develop that a loss was in fact realized. Since there is no finding of ratification of the assignment by all the other next of kin, we think that the mortgage remained beneficially an asset of the estate. The account must be revised to show the mortgage as an asset in schedule C and to state the possession account.

4. The appellants object to the failure of the probate judge to allow interest in two principal respects: (a) upon the portion of the several distributive shares not distributed within a reasonable time after cash was available to pay these distributions in whole or in part; and (b) with respect to the distributive share of the administrator's mother in the intestate's estate, of which the balance then remaining was the mother's major asset at her death.

There clearly was considerable informality in dealing with this estate. However, it would be improper and unfair to charge the administrator interest with respect to any retention of funds, which either was reasonable under the circumstances or was acquiesced in or consented to[1] by the next of kin affected, who (until recently at least) were friendly members of his immediate family and (because one was a lawyer, one had taken a law course, and one was a real estate broker) not without knowledge of business affairs of this type. The administrator claimed that "it was agreed between the administrator, his two sisters and

---

[1] See *Lannin* v. *Buckley*, 256 Mass. 78, 82; *Smith* v. *Paquin*, 325 Mass. 231, 233–234.

their mother that after the payment of Richard Sullivan's distributive share, as disclosed by the" administrator's first and final account, "the balance of the assets of the estate should be held by the administrator and be used to pay for the expenses of the maintenance of the home for the widow, the sisters and himself."

The auditor made no express finding with respect to interest either on the distributive shares of the appellants or on the share of the administrator's mother. In the ultimate conclusions, the auditor did not charge the administrator with interest of any sort. In addition to general findings already mentioned, the auditor did make the following subsidiary findings which are relevant to the issue of interest: (a) Each appellant demanded her distributive share in 1933 and together they prepared a petition to order the administrator to account. This was not filed, because the appellants desired to avoid a trial with resulting publicity, and not as consent to, or a ratification of, what was done by the administrator. (b) There was no express agreement, except by Richard, not to require a formal account in the Probate Court. (c) The administrator "did not make any profits with the funds of the estate" and did not receive "any interest on the funds of the estate in addition to that" reflected in the report and in the restated account. (d) The two appellants "knew by July, 1937, that the administrator had reduced to cash and spent all the assets of the estate except" certain mortgages and interests in real estate. (e) While the appellant Mrs. Connelly was at the house until 1937, she "paid her own way." (f) The appellant Helen Sullivan has never been continuously employed and never contributed to household expenses, although she assisted the administrator in various ways. (g) The intestate's widow authorized the administrator to "charge against her distributable share of her husband's estate charges for her maintenance and support" and for these purposes he did spend substantial sums.[1]

---

[1] There is no finding that Gilbert Sullivan did not pay his way in the household.

Ordinarily an administrator is not chargeable with interest on the money of the estate in his hands unless he has received interest or benefit from it or has unreasonably detained it. *Boynton* v. *Dyer*, 18 Pick. 1, 6–7. *White* v. *Ditson*, 140 Mass. 351, 362–363. *O'Shea* v. *Barry*, 252 Mass. 510, 511–513. See *McIntire* v. *Mower*, 204 Mass. 233, 235–236; *Gallagher* v. *Phinney*, 284 Mass. 255, 258; *Crowell* v. *Styler*, 314 Mass. 122, 128–129. Compare *Spilios* v. *Papps*, 292 Mass. 145, 147; *Johnson* v. *Hazen*, 333 Mass. 636. Here, however, the auditor's findings compel the conclusion that there has been unreasonable delay in distributing the shares of the appellants and possibly also of the share of the administrator's mother. The findings are not sufficiently complete to enable this court on this appeal to determine the precise extent of the delay or the amounts of interest to be charged. Accordingly, there must be a further hearing before the Probate Court or the auditor, as the probate judge may determine.[1] In such hearing the principles stated below will govern the charging of interest. (1) Interest will be charged to the administrator on all undistributed balances, if any, of the estate which had been turned into cash and which were used for his own purposes, without the consent of the other beneficiaries. Such interest will run from the date of any such use until the date of distribution or repayment of the funds. The finding of the auditor that by 1937 "the administrator had reduced to cash and spent all the assets of the estate" is ambiguous when read with his finding that the administrator "did not make any profits" or receive "any interest on the funds of the estate." There must be an explicit finding by the probate judge, or the auditor, whether the administrator wrongfully used any funds of the estate for his own purposes without the consent of the other beneficiaries. If he did do so, interest is to be charged, as already indicated. (2) It is not clear from the auditor's findings whether the other next of kin consented to, or acquiesced in, the very early payment to

---

[1] See *Smith* v. *Commonwealth*, 331 Mass. 585, 593–594.

Richard Sullivan (who was not living in the Codman Hill Avenue house and thus was receiving no benefit from it) of a large part of his distributive share. If there was such consent or acquiescence, that early payment does not set a standard of time of payment which must be followed in the case of the other distributive shares. If there was no such consent or acquiescence, the date of the payment to Richard is to be regarded as the date as of which, to the extent there were available cash funds of the estate, the administrator should have made proportionate distribution to the other next of kin, and interest on unpaid balances is to be charged from that date. It seems to us, however, that there may well have been acquiescence in the payment to Richard and that this may have continued at least until the appellants by their demands for payment in 1933 indicated a change of viewpoint. If there was such acquiescence until 1933, the administrator is to be charged with interest (from such date as may be found to be a reasonable time after the demands) upon the proportionate part of the cash balances which the estate then had (or should have had) which could then have been distributed to the appellants respectively, without leaving the administrator with insufficient cash assets to protect the unliquidated mortgage assets of the estate. In computing the amounts which could then have been distributed, the facts that Richard had already received $7,000, and that the administrator's mother was entitled to one third of the estate, should each be taken into account appropriately. (3) In determining unpaid balances due to the appellant Helen Sullivan, there must be taken into account any amounts reasonably advanced to her or for her benefit from the estate. We think the auditor incorrectly ruled that amounts paid to her for her support, or applied for her support, must be dealt with in a separate proceeding. If, with the acquiescence of Helen, amounts from the estate were applied by the administrator to her support, the administrator is entitled to credit for such partial payments. Compare *DiManno* v. *DiManno*, 332 Mass. 709, 711–712. As the record shows that she had no other funds, there is a

strong inference that she acquiesced in such payments. If there was no such acquiescence, a separate proceeding will be necessary. (4) There must be explicit findings about the terms upon which the administrator's mother agreed that he should retain her share of her husband's estate in substance as her agent. The terms of any agency arrangement, in fact found to exist, will control whether any interest at all is to be charged, and, if interest was contemplated, what interest could have been reasonably obtained, as for example in savings banks. If the widow merely authorized her son, as administrator, to "charge against her distributable share . . . charges for her maintenance and support," the administrator is to be charged with interest on any unpaid balances of the widow's share, which could have been distributed to her in cash without injury to the estate's interests. This interest will run from the date on which this distribution should reasonably have been made, if she did not in fact acquiesce in her son's delay, or from such later date, if any, as she withdrew that acquiescence, if she did acquiesce for a time and later withdrew her acquiescence.

5. The appellants object to the allowance of an item of $1,000 to the administrator as compensation for his services, assigned by the auditor to the years 1930–1931 as an expense. Since the decree must be reversed on other grounds, we think this question should be settled in the Probate Court after further findings on the conduct of the administrator are available. The principles governing the award of compensation under G. L. (Ter. Ed.) c. 206, § 16, as appearing in St. 1949, c. 140, are stated in earlier decisions. *McMahon* v. *Krapf*, 323 Mass. 118, 122–124. A fiduciary who commits a breach of his fiduciary duty imperils his compensation, but the rule is not inflexible. "Each case must be determined in the discretion of the court with reference to the peculiar factors found to be present" (see *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1, 4) including denial of compensation for work not properly performed. See Restatement: Trusts, § 243, comment a; Scott, Trusts (2d ed.) § 243. Fair consideration must be given to the net

benefit, if any, resulting from the administrator's services, giving due weight to any detriment caused to the estate. *Friedman* v. *Hazen*, 328 Mass. 233, 235. Delay in accounting is not fatal to an allowance but is to be considered on the basis of its effect on the estate. *Kinion* v. *Riley*, 310 Mass. 338, 341–342.

6. The appellants object that they were awarded costs and expenses in the Probate Court payable out of the assets of the estate. They contend that the costs and expenses already allowed, and those to be allowed in respect of this appeal and any further hearings, should be ordered to be paid by the administrator individually. Under G. L. (Ter. Ed.) c. 215, § 45, such allowances may be made "to either party, to be paid by the other, or . . . to be paid out of the estate." We think the matter of all allowances in respect of this accounting, including those relating to this appeal, should be left to the Probate Court for determination after, and in the light of, such further findings as may be made. See *Gallagher* v. *Phinney*, 284 Mass. 255, 258–259.

7. The decrees allowing the account and awarding costs and expenses to the appellants are reversed. The proceedings are to stand for further hearing in the Probate Court and for disposition in a manner consistent with this opinion.

*So ordered.*