ARTHUR T. WASSERMAN, individually and as trustee,
  *vs.* EMILY K. LOCATELLI & another, conservator.

Middlesex.  May 3, 1961. — June 22, 1961.

Present: SPALDING, WILLIAMS, CUTTER, KIRK, & SPIEGEL, JJ.

*Attorney at Law.  Trust,* Trustee's compensation.  *Probate Court,* Find-
ings by judge.  *Evidence,* Cumulative, Judicial discretion.

Upon an appeal from a decree of a Probate Court with a report of the
  evidence but no findings of fact, the entry of the decree imported a
  finding of every fact essential to its support.  [83]
This court, upon examination of all the evidence in a proceeding in a
  Probate Court by an attorney at law for a declaratory decree with
  respect to his counsel fees for services rendered to the respondent in
  connection with her domestic difficulties and a settlement agreement
  between her and her husband preceding their divorce and with respect
  to the petitioner's compensation for services as agent and trustee for
  her, reduced the total amount awarded by the judge to an amount deemed
  by this court to be a proper charge.  [85–86]
A temporary refusal by a trustee to turn over trust property to his bene-
  ficiary, not prejudicial to the beneficiary although unjustified and tech-
  nically a breach of trust, did not bar an allowance to the trustee of com-
  pensation for his services.  [87]
At the hearing by a Probate Court of a proceeding by an attorney at law
  for a declaratory decree with respect to the amount of his counsel fees
  for services rendered to the respondent in connection with a settlement
  agreement with her husband preceding their divorce, there was no abuse
  of discretion nor error prejudicial to the respondent in the exclusion of
  evidence of a cumulative nature that much of the preliminary work for
  the settlement agreement had been done by persons other than the peti-
  tioner.  [88]

PETITION, filed in the Probate Court for the county of
Middlesex on May 27, 1958.

The case was heard by *Leggat,* J.

*Talcott M. Banks, (George I. Mulhern, Jr.,* with him,) for
the respondents.

*George H. Foley, (Joseph Landis* with him,) for the peti-
tioner.

SPALDING, J.  The petitioner is an attorney who seeks
declaratory relief with respect to his fees for services ren-

dered to Emily K. Locatelli (Emily), for whom the Old Colony Trust Company, the corporate respondent, is conservator. After a hearing in the Probate Court, the judge entered a decree that the petitioner was entitled to $22,225.66, less $15,560.94 already received. The respondents appealed.

The evidence is reported. The judge made no findings of fact; and no report of material facts was requested by the parties. The decree imports a finding of every fact essential to its support. It is our duty to decide the case according to our own judgment, giving due weight to the findings implied in the decree of the probate judge. *Attorney Gen.* v. *Woburn,* 322 Mass. 634, 635. *Bodman* v. *Martha's Vineyard Natl. Bank,* 330 Mass. 125, 126.

It would serve no useful purpose to set forth the facts in full. The evidence, consisting of nearly 1,300 pages, is inordinately voluminous. We state only those facts necessary to a discussion of the few questions of law presented for decision.

In January, 1955, Emily engaged the petitioner to act as her counsel in connection with domestic difficulties which had arisen between her and her husband, Albert. After extended negotiations, a financial agreement was executed by the parties and a decree nisi of divorce was entered in the fall of 1956. Because, for tax purposes, it was deemed advisable to revise the agreement, the entry of the decree absolute at the request of the parties was delayed. In September, 1957, a revised agreement was entered into and thereupon the decree of divorce became absolute. The libel, brought by Emily, was uncontested. On October 28, 1956, the petitioner opened an account in the Pilgrim Trust Company in his own name as trustee. From time to time thereafter, Emily indorsed checks for him to deposit in this account, and with these funds he paid her bills as they arose. Under the September, 1957, agreement the petitioner was to receive all the payments for Emily's account. The assets due her under the agreement were also turned over to him. Subsequently the petitioner prepared a for-

mal declaration of trust, naming himself as trustee, to hold these assets and to make disbursements for Emily's use and benefit. Emily continued to send him her bills to be paid, and acquiesced in the arrangement, although, despite the petitioner's urgings, she never signed the declaration.

The petitioner continued to act as Emily's counsel until February, 1958, when, because of her physical disabilities, the Old Colony Trust Company was appointed her conservator. On March 11, 1958, the petitioner turned over to the conservator all the assets of the so called trust except the amounts on deposit in two savings banks: the Boston Five Cents Savings Bank and the Second Federal Savings and Loan Association. By a letter dated April 8, 1958, the conservator demanded that the pass books of these savings accounts be turned over to it. On April 14, the petitioner withdrew the entire balance of $7,560.94 from the Boston Five Cents account, sent $2,000 to the conservator needed for Emily's taxes, and paid the balance ($5,560.94) to his own firm. Contending that the conservator had agreed that he could keep the Federal Savings and Loan pass book until the next interest date, July 1, 1958, he did not turn this over to the conservator, as requested. The conservator denied that it had made any such agreement. On April 16, 1958, the conservator received a bill from the petitioner for $25,000 for his services to Emily.[1] On May 15, the conservator and Emily informed the petitioner that they denied there was a valid trust, but that if it was valid, it was amended in accordance with its terms (copies of which were furnished to the petitioner) and the petitioner was requested to turn over to the conservator $10,000 from the Federal Savings and Loan account. The petitioner took the position that the trust was terminated upon the appointment of the conservator, but stated that he was willing to "rescind" the alleged agreement to keep the pass book until July 1, 1958, if he were paid the balance of his fee ($9,439.06) and was released from liability for loss of

---

[1] Of this charge he had previously been paid $15,560.94, $10,000 at the time of the September, 1957, agreement and $5,560.94 on April 14, 1958. He thus claimed a balance of $9,439.06.

interest.   On May 21, 1958, counsel for Emily and the conservator demanded that the entire balance in the Federal Savings and Loan account plus the $5,560.94 from the other savings account which the petitioner had paid to his firm be turned over to the conservator.   The petitioner did not reply to this request, and on May 27, 1958, brought this bill for declaratory relief seeking an adjudication, among other things, as to the amount of compensation to which he was entitled.   The decree ordered that the petitioner be paid $4,725.66 for his services as agent and trustee, and $17,500 as counsel fees, less the $15,560.94 already received.

The respondents contend that the fees allowed were excessive because, it is alleged, (1) the petitioner took improper advantage of Emily's ill and mentally confused condition to obtain an agreement for additional fees; (2) the petitioner, without authority, acted as trustee of her property and used his position to his own advantage; and (3) the reasonable value of his services was less than the amount allowed.   We are of opinion that this last contention, to the extent indicated below, must be sustained.   We have all the evidence before us, and, recognizing that questions of credibility must be resolved in favor of the petitioner and the judge's decree, we are of opinion, nevertheless, that the amounts allowed in the decree are excessive.

There was evidence that Emily was mentally competent and that she, by her actions, approved of the petitioner's acting under the formal declaration of trust, and the judge could have so found.   The original arrangement was for Albert, the husband, to pay all of Emily's counsel fees in connection with the divorce, and it was agreed that $10,000 would be a proper amount.   In the first settlement agreement following a provision that the husband was to pay $10,000 to the petitioner for legal services in connection with the divorce it was further provided that "[n]othing herein shall be construed to prohibit or prevent . . . [the petitioner] from making additional or direct charges to the wife by reason of his representation of her as aforesaid."   It was decided, for tax reasons, to revise this agreement by

providing that the counsel fees assumed by Albert would be paid directly to Emily. Contrary to the respondents' contention, it could have been found that Emily understood that the petitioner intended to charge more than the $10,000 Albert was to pay, and was not overreached by the petitioner; but she did tell him to keep the extra charges low. Although a finding was justified that there was to be some additional charge to Emily for services, the evidence would not support a finding that there was any understanding that it was to be a great deal more than the $10,000 which Albert had agreed to pay, certainly not the additional amount allowed by the trial judge. Nor, apart from any supposed understanding of the parties, would such an amount be justified. The question, then, is what were the services of the petitioner fairly worth. The judge in his decree awarded the petitioner as counsel fees the sum of $17,500 and $4,725.66 or a total of $22,225.66. From a careful examination of all the evidence and guided by the principles set forth in *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569, we are of opinion that a proper charge for all the services rendered by the petitioner, including those as agent and trustee, should not exceed $17,500. Since these charges in essence must be borne by Emily, whether they are paid from the trust fund or by her directly, we need not disturb the allocation of the amount to be paid from the trust fund made by the judge; but we do not intimate that the amount so allocated was a proper charge for the petitioner's services as trustee and agent.

The respondents urge that the petitioner in refusing to pay over the proceeds of the Federal Savings and Loan account committed a breach of trust and thereby forfeited his right to compensation as trustee. The petitioner seems to have taken the view that the trust was at an end upon the appointment of the conservator. The respondents' position is that if there was a trust it was subject to amendment, that it was amended by the joint action of the conservator and Emily, and that as a result of the demands

made to the petitioner under these amendments his right to hold the trust property was at the will of the conservator and Emily. It makes no difference to this decision which of these contentions is correct, because under either theory a time had arrived when the petitioner was under an obligation to turn over the trust property. Even if there had been a prior agreement that the petitioner could keep the pass book until July 1, Emily and her conservator could have changed their position at any time and the petitioner would have had no cause for complaint.

A trustee has a lien upon the trust property for compensation for services rendered to the trust. Restatement 2d: Trusts, § 242, comment e. Scott, Trusts (2d ed.) § 242.3. See *Bradbury* v. *Birchmore,* 117 Mass. 569, 580; *Commissioner of Internal Revenue* v. *Davis,* 132 F. 2d 644, 647 (1st Cir.). But this lien or set-off does not extend to an indebtedness of the beneficiary to him which is unconnected with the trust. *Abbott* v. *Foote,* 146 Mass. 333. Restatement 2d: Trusts, § 250. Scott, Trusts (2d ed.) § 250. The petitioner had already credited himself with $5,560.94, a generous amount to cover his charges arising out of the administration of the trust. He had no right to withhold the trust funds to cover matters such as services in the divorce negotiations, which were obviously unrelated to the trust. But a week after the conservator had demanded the money in the Federal Savings and Loan account, the petitioner brought these proceedings to establish his rights, and, by agreement of the parties, the pass book was delivered to the court in the fall of 1958. Thus, although the petitioner's refusal to turn over the sums requested constituted, technically, a breach of trust, Emily's interests were not substantially prejudiced, and it was within the discretion of the judge to allow, deny or reduce the petitioner's compensation. See *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 4; *Kinion* v. *Riley,* 310 Mass. 338, 341–342; *Sullivan* v. *Sullivan,* 335 Mass. 268, 279–280; Scott, Trusts (2d ed.) § 243. While the exercise of such discretion is subject to review on appeal (*Coe* v. *Coe,* 313 Mass. 232, 235) we are not disposed to revise it.

Certain evidence offered toward the end of the hearing was excluded.  The respondents sought to show that much of the preliminary work for the settlement agreements had already been accomplished by others and thus to demonstrate why the petitioner's fee was excessive.  While the judge might well have admitted this evidence, we cannot say that its exclusion was prejudicial in view of its cumulative nature and the discretion vested in the judge as to such evidence.  *Passanessi* v. *C. J. Maney Co. Inc.* 340 Mass. 599, 602–603, and cases cited.

The final decree is reversed and a new decree is to be entered ordering that the petitioner is to be paid the sum of $4,725.66 as agent and trustee; and as counsel fees the sum of $12,774.34, making a total of $17,500, less the sum of $15,560.94, previously paid to him.  The respondents' costs and the expenses of this appeal are to be in the discretion of the Probate Court.

*So ordered.*