FRANCIS M. McMAHON, executor, *vs.* GEORGE W. KRAPF, trustee, & others.

Berkshire.   March 2, 1948. — June 22, 1948.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Executor and Administrator*, Compensation, Payments.

A decree of a Probate Court allowing $3,800 only upon a claim of an executor for $19,520 for his services covering a period of almost three years was justified by findings of the judge, not plainly wrong, on evidence respecting simplicity of problems encountered by the executor, unnecessary character of some services performed by him, lack of skill and confused nature of his accounting, payment of unreasonable sums for appraisal, payment of bills barred by the short statute of limitations, maintenance of a large residential property and time spent in usurping functions of a trustee and of a guardian.

No error appeared in disallowance by a judge of probate of a claim by an executor for compensation for time spent at hearings upon his accounts where the judge upon evidence received at the hearings warrantably surcharged him for a substantial sum.

Evidence at hearings in a Probate Court upon accounts of an executor warranted disallowance of items of expense in keeping open an extensive residential estate, reduction of an item of payment to a family physician, reduction of an item for storage of furs, and reduction of an item of payment to an attorney whose services were found to have been in part only for the benefit of the estate.

No error appeared in the allowance, to avoid circuity of action, of items in an executor's account for expenditures which the judge of probate found would have been proper if made by trustees under the will or by the guardian of the principal beneficiary of the estate and of the trust, as the case might be, and which the evidence showed were made with the consent of the trustees.

PETITION in the Probate Court for the county of Berkshire by the executor of the will of Marjorie Paddock Bragaw

for allowance of his first account, filed on April 28, 1944, and covering the period from December 24, 1942, to December 24, 1943; his second account, filed on April 24, 1945, covering the period from December 24, 1943, to December 24, 1944; and his third and final account, filed on November 18, 1945, and covering the period from December 24, 1944, to October 3, 1945.

The case was heard by *Hanlon*, J.

*F. M. Myers*, for the petitioner.

*R. A. Lewis & L. S. Cain*, for the respondents.

RONAN, J.  These are appeals from decrees respecting three accounts of Francis M. McMahon, executor of the will of Marjorie Paddock Bragaw.

The testatrix died on September 16, 1942, leaving as her sole heir and next of kin her son Geoffrey B. Krapf, who was then about fifteen years old and was a helpless invalid requiring constant care and nursing.  Although the testatrix had lived in Dalton nearly all of her life, she was described in the will, which was drafted by Mr. McMahon, as of Miami Beach, Florida.  After providing in her will for the disposition of some of her property in accordance with a certain list which has never been found, the testatrix left the residue of her property in trust for the benefit of her son.  Mr. McMahon, Charles W. Dewey and George W. Krapf, the former husband of the testatrix, were named trustees.  The income of the trust or so much as was needed was to be used for the care and support of Geoffrey, and the trustees were authorized to resort to the principal if in their judgment an emergency should exist which would warrant payments out of the principal.  The will made no provision for the distribution of the trust property upon the termination of the trust.

After the death of the testatrix, Mr. McMahon went to Florida to secure the probate of the will and his appointment as executor.  The will was admitted to probate but, being a nonresident, he was ineligible for appointment as executor and one Wiseheart was appointed in his place.  A copy of the will was ordered filed and recorded in the registry of probate for the county of Berkshire on December 24,

1942, and Mr. McMahon was appointed executor.  According to the inventory, which was not filed until December 14,. 1943, the estate consisted of real estate valued at $61,350 and of personal property valued at $79,793.89.  Other than bank deposits amounting to nearly $65,000, the personal property consisted of furs, jewelry and house furnishings. Wiseheart had taken to Florida all the securities from a safety deposit box together with certain jewelry.

· Elizabeth Crane Paddock, the mother of the testatrix, predeceased her on May 27, 1942.  Her will created a trust fund of $50,000 for the benefit of Geoffrey, and left a substantial amount of property to Mrs. Bragaw.  Mrs. Paddock was a woman of considerable means, but all that was received by the accountant from her estate during the period of these accounts were certain articles of personal property of the value of $3,444.12, although some money was paid by the administrator with the will annexed of the estate of Mrs. Paddock to the trustees under the will of Mrs. Bragaw and was expended in making payments to the guardian of Geoffrey.

Mr. McMahon and Dewey qualified as trustees on June 10, 1943.  Dewey at that time was in the army and was then stationed in Connecticut and at other times in not too far distant places, so that Mr. McMahon was able to and did confer with him.  Krapf was in the army and had gone overseas before Mr. McMahon had been appointed executor and did not return to this country until May or June, 1944. He qualified as trustee on September 19, 1944.  There was correspondence between Mr. McMahon and Krapf while the latter was serving in the army.

The testatrix, Mrs. Bragaw, had lived for many years in a cottage which her parents had constructed for her at the time of her first marriage upon the same premises where they resided in a large dwelling, referred to in the record as the big house.[1]  These two dwellings were located upon a fifteen acre parcel which was laid out with driveways, flower beds, gardens, shrubbery and lawns.  It contained some

---

[1] The big house became a part of the Bragaw estate through the will of Mrs. Paddock.

meadow lands and trees.  Mr. McMahon kept the big house open during almost the entire period of his executorship, employing two women to live there, paying their wages, and furnishing them with food, fuel, electricity and telephone service.  He employed men to care for the grounds.  In addition he incurred expenses for tools, seeds, care of the trees, plowing out driveways, and repairs on both the big house and the cottage where Geoffrey resided as he had for many years before the death of his mother.  Mr. McMahon made no effort to dispose of the big house.  He paid the taxes assessed upon this parcel of land, water bills, and premiums on fire, theft and workmen's compensation insurance.

Sidney M. Benedict was appointed guardian of Geoffrey soon after the death of Mrs. Bragaw, and Mr. McMahon turned over to him various amounts for the support and maintenance of Geoffrey, and in addition Mr. McMahon at the expense of the estate furnished fuel, food, medicine, household furnishings and equipment for the ward without consulting the guardian.  The guardian's attorney wrote to the executor on May 14, 1943, that it was not wise or desirable that the big house should be kept open but that it should be closed and sold.  The attorney for the guardian under date of July 28, 1944, wrote to the guardian (and furnished Mr. McMahon with a copy) that it was not planned to dispose of the personal property in the big house before the first of September and that in the meanwhile it would be necessary to keep the maids as they would be needed in connection with the disposition of the personal property.  To this letter the guardian replied that Krapf preferred that the disposition of the personal property and the closing of the house be deferred to a later date.  There was no direct evidence that the guardian knew that Mr. McMahon was furnishing articles for the ward, but the inference is not unwarranted, from the nature of these articles and the extent to which they were supplied, that he knew that Mr. McMahon was contributing toward the maintenance of the ward although he might not have known all the particular articles which he was supplying.  The guardian made no complaint of this conduct of Mr. McMahon.  We need not

decide whether the consent of the guardian would bar the ward, *Mooers* v. *Greene,* 274 Mass. 243, 252; *McInnes* v. *Whitman,* 313 Mass. 19, 27, because it will appear from the findings of the judge, hereafter referred to, that the estate of the ward benefited and was not harmed by these expenditures of the accountant.

We first consider the objections urged by the executor to the decrees entered upon his accounts.

Certain payments were disallowed and others reduced, resulting in surcharging the executor for $29,758.58. The judge made detailed findings of fact which stated the grounds upon which his conclusion was based in dealing with the various items for which the accountant sought a credit. We also have a transcript of the evidence. In accordance with the familiar rule these findings of the judge are not to be reversed unless they are plainly wrong. *Allen* v. *Moushegian,* 320 Mass. 746, 752. *American Employers' Ins. Co.* v. *Webster,* 322 Mass. 161, 163.

1. The judge allowed the executor $3,800 for his services during the period covered by the accounts, which was from December 24, 1942, to October 3, 1945.[1] He found that the problems of the executor were more simple than usually encountered in an estate having personal property of about $80,000 of which approximately $65,000 was represented by bank deposits, although eventually the substantial fortune willed to the testatrix by her mother would come into her estate; that the arrangement made with The Berkshire Trust Company, the administrator de bonis non with the will annexed of Mrs. Paddock's estate, to supply funds to the trust created by Mrs. Bragaw's will was a trustees' problem rather than an executor's; that the accounts prepared by the accountant showed lack of skill and care, for they contained certain items which were obviously improper for an executor to include but some of which were proper payments for the trustees or guardian; that although executor's, trustees' and guardian's payments were mixed together, the accountant was doubtful as to

---

[1] The executor claimed for such services $10,000 in his first account, $8,000 in his second account, and $1,520 in his third and final account.—REPORTER.

what many of the payments were for and in some instances admitted that he did not know the purpose for which they were made; that he paid unreasonable sums for appraising the estate; that he paid bills which were barred by the short statute of limitations; that he kept the big house open and thereby incurred expenditures which were detrimental to the estate; that he spent considerable time usurping the duties of the cotrustees and the guardian; and that he made no apparent effort to get the trusteeship working on a businesslike basis and completely ignored the guardian. The judge refused to allow anything to the executor for the time he spent in defending the first two accounts. In addition to the amount allowed by the judge, the accountant had received $3,000 from the Florida executor.

The executor was entitled to such fair and reasonable compensation for his services as the Probate Court might allow. G. L. (Ter. Ed.) c. 206, § 16, as amended by St. 1941, c. 36. The size of the estate, the marketable nature of the assets, the factual and legal questions involved in its administration, the time reasonably required for completing the work, the skill and ability employed, the amounts usually paid others for similar work, and the results accomplished, are some of the factors to be considered in ascertaining the compensation of an executor. None of these factors alone is decisive. *Cummings* v. *National Shawmut Bank*, 284 Mass. 563. *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329. Much depends upon the facts in each particular case. The matter rests to a large extent in the discretion of the judge. *Moulton* v. *Thompson*, 291 Mass. 308. *Crowell* v. *Styler*, 314 Mass. 122. The executor is not entitled to compensation for services rendered which were unnecessary. The accountant relies upon a promise to the testatrix that he would see that the ward was properly maintained. The guardian was charged with that obligation. Mr. McMahon's duties as executor were to obtain possession of the personal property, to pay the debts, legacies and costs of administration, and to close the estate as soon as that could be reasonably accomplished. There was no evidence that the guardian was not properly performing the functions of his

office. Neither is the accountant entitled to compensation for work rendered necessary solely by reason of the manner in which he performed his duties. There was no error in refusing compensation for the time spent at the hearing upon his first two accounts. *Bogle* v. *Bogle*, 3 Allen, 158. *Blake* v. *Pegram*, 109 Mass. 541. *Rowland* v. *Maddock*, 183 Mass. 360. *Comstock* v. *Bowles*, 295 Mass. 250. What was a reasonable fee was a question of fact for the judge. An examination of the evidence does not convince us that the judge was plainly wrong in fixing the amount which he did. *Gallagher* v. *Phinney*, 284 Mass. 255. *Spilios* v. *Papps*, 292 Mass. 145, 147. *Kinion* v. *Riley*, 310 Mass. 338, 342. *Wiley* v. *Fuller*, 310 Mass. 597, 601, 602. *McInnes* v. *Whitman*, 313 Mass. 19, 31, 32.

2. The executor has no just complaint as to the disallowance of certain expenditures made to keep open the big house. The evidence and the findings of the judge lead to no conclusion other than that this was an unnecessary and unreasonable expense. *Turner* v. *Morson*, 316 Mass. 678, 689, 690. This is not a case where the question can be said to be fairly debatable and where, as the accountant contends, the judge should not substitute his judgment for that of the accountant. The finding of the judge is not plainly wrong but is manifestly right. Beneficiaries of a trust are entitled to the protection of the courts where there is a clear abuse of discretion or where the exercise of judgment by a fiduciary is clearly inconsistent with a due appreciation of his responsibilities as a fiduciary. *Proctor* v. *Heyer*, 122 Mass. 525, 529. *Leverett* v. *Barnwell*, 214 Mass. 105, 108. *Eustace* v. *Dickey*, 240 Mass. 55, 83–84. *Dumaine* v. *Dumaine*, 301 Mass. 214, 220–221.

3. There was no error in reducing the item showing payment of the bill, amounting to $1,116.49, of the family physician who went to New York at the request of the testatrix and attended her during the last two days of her life. The judge allowed $100 a day for the four days that he was away from Pittsfield, together with his expenses.

4. An item showing payment of a charge for storage of furs was based upon more than double the appraised value

of the furs fixed by a New York expert hired by the accountant. Based on that value the charge should have been $96, the amount allowed by the judge. We see no reason to disturb this finding.

5. The judge reduced the item of $1,500 paid by the executor to his counsel to $500. These services were rendered in a skilful and competent manner and were found to be fairly worth the amount claimed, but the entire amount was not properly chargeable to the estate. The executor's counsel appeared for the surety company which furnished the executor's bond, and also for Mr. McMahon and Dewey, cotrustees. This attorney conferred with the executor and an official of The Berkshire Trust Company at different times relative to the keeping of the Paddock securities, and during this period was acting as counsel for the trust company of which he was a director and member of its investment committee. The judge considered all the services performed by this attorney who represented various interests, some of which were joined in common cause and some of which were not, and determined what part of these services was undertaken for the sole benefit of the executor and allocated that portion of his total charges which was justly payable to him from the estate. A careful examination of the evidence does not show that the judge was wrong in allocating one third of the attorney's fee as properly chargeable to the estate. *Gordon* v. *Guernsey,* 316 Mass. 106, 111.

6. We now proceed to discuss the objections urged by the present cotrustees and others.

Krapf as cotrustee appealed from the decree allowing the first and second accounts as amended, and he, the Pittsfield-Third National Bank and Trust Company as administrator de bonis non with the will annexed of Mrs. Bragaw and also as trustee under her will,[1] and Sidney M. Benedict as guardian appealed from the decree entered on the third account. The objection urged by them is that the executor should not have been credited for payments for taxes, insurance, repairs, maintenance of the grounds and articles

---

[1] The Pittsfield-Third National Bank and Trust Company succeeded Mr. McMahon as executor and Dewey as trustee.

furnished to the ward. The judge found that they would have been proper expenditures for the trustees or the guardian to make, as the case might be, and in order to avoid circuity of action he allowed them. The necessary implication from these findings is that these expenditures were reasonably necessary, fair in amount, and beneficial to the trust estate or to the ward, and that these estates received full consideration for the amounts expended.

Dewey from the time of his qualification as trustee and up to the end of the accounting period knew that Mr. McMahon was making payments out of the executor's account for purposes for which the trust would have to make expenditures in preserving and maintaining the trust property. It was stipulated by counsel that Dewey as cotrustee was kept informed by Mr. McMahon as to what the latter was doing and consented to everything that he did except that, in so far as now material, Dewey did not know the exact amount of money expended by the executor for services at either the big house or the cottage, nor the names of those to whom payments were made.

Krapf knew before he left for overseas that he had been named in the will as one of the trustees but he did not then qualify, and although he returned in May or June, 1944, he did not qualify as cotrustee until September, 1944. He was informed in a general way by Mr. McMahon as to what the latter was doing. He knew that the big house was being kept open, that men were employed to maintain the grounds, that a sun porch had been added to the cottage, and that the ward, his son, was being properly maintained. His chief concern seems to have been the care of the ward. He approved the keeping open of the big house even after he was discharged from the army. He was generally familiar with the manner in which Mr. McMahon was administering the estate although he seems not to have had any specific, detailed and complete information on any particular subject. Like Dewey he appeared to have been satisfied to allow Mr. McMahon to attend to such matters as came within the administration of the trust, although Krapf in the spring of 1945 changed his attitude as to Mr. McMahon's

action, and thereafter coöperation between him and Mr. McMahon entirely ceased.

The judge found that Mr. McMahon in using the funds of the executor in paying the items in question was proceeding on the theory that no harm would result "if the other two trustees acquiesced, or later ratified his acts, which they seem to have done in some instances," and that the two trustees although in the armed forces could have functioned as trustees if they had been called upon by Mr. McMahon. He also found that "it is true that the other two trustees (Col. Krapf and Major Dewey) may have acquiesced, by letters which they wrote to Mr. McMahon, in payments he was making as trustee, at least up to April 6, 1945 . . . ."

An examination of the entire evidence satisfies us that Mr. McMahon's cotrustees consented to all the payments which the judge allowed, as he said, to avoid circuity of action. We have already construed this action of the judge to mean that he allowed certain payments because they were found to be beneficial to the trust estate and to that of the ward. The cotrustees were content to allow the accountant to continue along the course he had adopted without let or hindrance from them although they knew in the main his principal activities in dealing with the trust estate. Dewey never repudiated any acts of the accountant; and neither did Krapf until April 6, 1945, when he decided not to go along any farther with the accountant. The necessary implication from the allowance of these items for the reason assigned is that the judge found that they would have been proper payments if they had been made by the fiduciary whose duty it was to make them.

The offices of executor, trustee and guardian are separate and distinct from and independent of each other and, ordinarily, must be treated as such if there is to be an orderly and efficient performance of the duties of each office in conformity with established rules governing the conduct of fiduciaries. *Eaton* v. *Walker*, 244 Mass. 23. *Brackett* v. *Fuller*, 279 Mass. 62. *Cook* v. *Howe*, 280 Mass. 325. *Campbell* v. *Ashler*, 320 Mass. 475.

We do not mean by anything said here to encourage in

any way such laxity of procedure as was adopted in the instant case. Equitable principles have frequently been applied in the Probate Court to reach a just result even where the methods of the fiduciary did not strictly comply with established standards or where his conduct was open to technical objections which, however, were overweighed by considerations of equity and good conscience. *Cook* v. *Howe*, 280 Mass. 325. *Ashley* v. *Collins*, 292 Mass. 67. *Dudley* v. *Dudley*, 300 Mass. 270.

Until the qualification of the trustees or at least some of them, it was the duty of Mr. McMahon, as executor, in the circumstances to carry out the trust, *McInnes* v. *Whitman*, 313 Mass. 19, 28. Krapf had not expressly declined to act as cotrustee but so unnecessarily delayed his qualification as to justify an inference of declination. *Monk* v. *Everett*, 277 Mass. 65. Upon his qualification it became the duty of each trustee to participate actively in the administration of the trust. *Loughery* v. *Bright*, 267 Mass. 584. Mr. McMahon, however, continued to administer the trust as he had since his appointment as executor. *Howard* v. *Hunt*, 267 Mass. 185. In making these expenditures, which the judge has impliedly found would have been proper if made by the trustees, he was acting as trustee, Scott, Trusts, § 6, even though his functions as executor and as one of the trustees were successive, as the trust created by the will was of all the residuary estate. If a loss occurs on account of expenditures improperly made by an executor acting as trustee, he and the sureties upon his executor's bond are liable. *Newcomb* v. *Williams*, 9 Met. 525. *Brigham* v. *Morgan*, 185 Mass. 27. Where a loss to an estate has not been caused by the executor's wrongdoing or neglect in making investments as trustee which would have been proper for a trustee to make, he has been held not liable for the loss. *Springfield National Bank* v. *Couse*, 288 Mass. 262. Where no loss results from the executor's acting as trustee in making expenditures reasonable in amounts and reasonably required for the preservation of the trust res, the amounts of such disbursements should be allowed to him. Here the trust estate and that of the ward have

benefited commensurately to the amounts expended, and the judge was not wrong in allowing them to the executor. *Little* v. *Little,* 161 Mass. 188. *Mooers* v. *Greene,* 274 Mass. 243, 254.

The accountant has argued that, as Krapf is the only party who has appealed from the decree upon the first and second accounts, his appeal ought not to be entertained because on the death of his son the trust will terminate and all the residuary estate will be distributed to Krapf or his heirs. Krapf had a duty to protect the trust estate. It is, however, settled that one trustee may maintain a suit against a cotrustee for a breach of the trust even though he may have contributed to the breach. *Marshall* v. *Caldwell,* 125 Mass. 435. *State Street Trust Co.* v. *Walker,* 259 Mass. 578. *Hendrick* v. *Mitchell,* 320 Mass. 155, 159. *Baynard* v. *Woolley,* 20 Beav. 583. *Tracy* v. *Central Trust Co.* 327 Pa. 77. Scott, Trusts, § 200.2. Perhaps the short answer to this contention is that, as the decree must be affirmed, Krapf as appellant takes nothing by his appeal.

*Decrees affirmed.*