AUGUSTA B. EDELSTEIN & another *vs.* OLD COLONY TRUST
COMPANY, executor, & others.

Suffolk.    December 5, 1957. — January 15, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Executor and Administrator*, Compromise.    *Gift.    Evidence*, Relevancy
and materiality.    *Probate Court*, Costs.

The decision whether to compromise a claim against a decedent's estate
under a power given in his will to the executor "to pay any . . .
claims . . . upon any evidence which to . . . [him] shall seem suffi-
cient" rests in the sound discretion of the executor exercised in good
faith.    [662–663]

A conclusion that an insurance business individually owned by a husband
for many years "had become the sole property" of his wife by way of
gift some months before his death was justified by evidence of state-
ments by him showing a donative intent and of a continuous course of
conduct whereby he relinquished control of the business to her after
training her to take it over, although there was no document trans-
ferring the business to her.    [664]

Evidence reported in a proceeding in the Probate Court justified conclu-
sions that the executor of a will, which authorized him to compromise
any claims, made a careful investigation of claims of the testator's
widow under an antenuptial agreement and against the testator's
estate and "in every respect acted in good faith and exercised excellent
and well considered judgment" in requesting the court's approval of a
compromise of such claims by petition under G. L. (Ter. Ed.) c. 204,
§§ 13, 14, and that the compromise was prudent; and supported a
decree allowing the petition.    [664]

At the hearing of a proceeding brought in the Probate Court by an execu-
tor for approval of a proposed compromise of claims by the testator's
widow, it was proper to admit certain evidence relevant to the execu-
tor's diligence and good faith and showing the investigations made
and the information and reasons upon which he based his recommenda-
tion that the court approve the proposed compromise.    [665]

Upon an appeal by a daughter of a testator by her sister as her conservator
and by the sister in her own right from various decrees of the Probate
Court respecting the testator's estate, this court, upon affirming the
decrees, ordered costs and expenses of the appeal to be allowed, in the
discretion of the Probate Court under G. L. (Ter. Ed.) c. 215, § 45, to
the executor, to be paid by the appellants, since there was little justifi-
cation for appealing, the responsibility for the appeal was on the com-
petent sister, and the incompetent sister took priority over her under
the residuary article of the testator's will.    [666–667]

PETITIONS and motions filed in the Probate Court for the county of Suffolk and heard by *Wilson*, J.

*Alvin J. Slater*, for the appellants.

*Haskell Cohn*, (*William H. Wolf* with him,) for Old Colony Trust Company, executor.

CUTTER, J. These are appeals by daughters[1] of Isadore Goldman (hereinafter called the testator) from various decrees of the Probate Court, including decrees denying a petition for the removal of the executor of his will and allowing a petition of the executor for approval of a compromise.

The testator had conducted an insurance brokerage business in Boston for some thirty years prior to his death on September 30, 1955. He married Rose Goldman on February 17, 1948, after the execution of an antenuptial agreement by which she agreed with him that, if she survived the testator, (a) she would accept from his estate "as her distributive share . . . only the customers' list used by him in his business"; (b) that he would "provide in his last will . . . that . . . she shall receive only the said customers' list . . . free and clear"; and (c) that she would "neither contest . . . or waive said will."

The probate judge found the facts stated below. Prior to the testator's death, beginning about 1953, he "frequently told his wife the insurance business was to be hers." She had been active in helping him with it and he explained its operations to her. In January, 1955, he had a tumor removed from his brain and "[s]hortly before he entered the hospital he stated to his wife that he was giving her the business, wanted her to take care of it, and make a living out of it." From then on he "never exercised any control . . . over the business" and she "took over the business as her own." After this and prior to the testator's death, Mrs. Goldman paid all business bills, as well as her husband's hospital and household expenses. She borrowed money on her own credit and used it in the business.

The testator left an estate of some $37,000, which supple-

---

[1] By a marriage prior to that to Rose Goldman, his widow.

mented inter vivos gifts to his daughters and annuity and insurance provision for them. By his will "on the . . . express condition that she accepts the bequests made for her . . . in lieu of . . . all other rights" his widow was to receive $4,000, certain tangible personal property and the money in a joint account with the testator in the New England Trust Company which amounted to $7,200.[1]

Mrs. Edelstein filed a motion that the court direct the executor to amend the inventory by adding to it, as an asset, the value of the insurance business. The executor filed a petition to nullify the widow's waiver of the testator's will in view of the antenuptial agreement. These moves caused the executor to make a "complete investigation" through counsel of the situation with respect to the insurance business and of other relevant circumstances. Accountants also looked into the financial condition of the insurance business, which the executor's representatives treated as having had a book value (exclusive of a checking account of $1,624 and of any allowance for good will) of about $9,200 on the date of the testator's death.

Eventually a compromise of the controversies between the executor and Mrs. Goldman was formulated. Under this, subject to the approval of the Probate Court, Mrs. Goldman was (a) to accept the provisions in the will for her in lieu of anything under the antenuptial agreement; (b) to release all claims as a creditor of the testator's estate for her money used to pay expenses; (c) to give up the business checking account of $1,624 and all claim to renewal commissions on the testator's life insurance premiums; and (d) to assume as her own all liabilities of the business from and after her taking it over in January, 1955. In return

---

[1] It also appears from the will that the testator's married daughter Mrs. Edelstein received a legacy of $7,500; that the residue was left in trust to pay to his other daughter, Sarah, who was an incompetent under conservatorship, $50 per week during her life, with discretion in the trustees to pay out, in addition, either income or principal for her necessary expenses for medical, nursing and hospital care; and that after Sarah's death, the balance then remaining was left principally for the benefit of Mrs. Edelstein and her issue in a manner not here relevant. A guardian ad litem was appointed to represent Sarah and the interests of unascertained persons and persons having no legal guardian. He assented to the compromise agreement here in issue.

the executor was to agree (a) to her receiving the bequests given to her by the will and (b) that she owned the insurance business (with the exceptions already mentioned of its checking account and life insurance renewals).

The probate judge expressly found (a) that by "June, 1956, the executor . . . became convinced that the testator had made a gift of his insurance business to Mrs. Goldman on . . . January 16, 1955," (b) that it "had doubts as to the validity of the antenuptial agreement" because the testator had not in fact made the testamentary provisions for his wife required by the agreement; (c) that the executor took account of the fact that Mrs. Goldman had lent money and rendered services to the testator and had used $4,690 of her own money to pay bills for him in 1955 prior to his death; and (d) that the trust company had made careful calculations (which need not be set out in detail here) indicating that, under the compromise agreement, Mrs. Goldman would receive $13,200, "only $2,000 more than she would receive in any event" and substantially less than the amounts which she would receive upon other possible results of the controversies. The probate judge also found "that the executor properly and in good faith did not include in the inventory a valuation for the insurance business"; that this business "had become the sole property of Mrs. . . . Goldman at least since January of 1955"; and that the executor "in every respect acted in good faith and exercised excellent and well considered judgment" in deciding that Mrs. Goldman owned the business and in requesting approval of the compromise.

1. Article IX of the will provided (in part), "My executor and trustees, as the case may be, shall have the power to compound or compromise any debts owing to the executor or trustees or any other claims, and to pay any debts or claims against the executor or trustees upon any evidence which to them shall seem sufficient." The provision gives to the executor a very substantial range of discretion in the compromise of claims and disputes affecting the estate. The decision whether to effect a compromise in a particular

situation under such an express power is primarily that of the executor in whom the testator has reposed confidence. In reviewing his exercise of this broad power, or his recommendation as to the manner of its exercise, very great weight must be given by the courts to his determination with respect to the wisdom of compromise.

Accordingly, the executor's action is to be examined recognizing that, to the same extent as in *Dumaine* v. *Dumaine,* 301 Mass. 214, 224 (with respect to the different power there considered), the executor "under the clause in question has full power and discretion, after serious and responsible consideration, short of arbitrary or dishonest conduct or bad faith or fraud," to make a compromise of the disputes here involved without risk of being charged in its accounts in any respect by reason of the compromise. See *Jones* v. *Jones,* 297 Mass. 198, 207; *Kinion* v. *Riley,* 310 Mass. 338, 339–340; *Hays* v. *Heinz,* 317 Mass. 337, 340–341; Newhall, Settlement of Estates (3d ed.) §§ 80, 392; Scott, Trusts (2d ed.) § 192.[1] Compare *Galvin* v. *Cavanaugh,* 323 Mass. 486, 488–489, *S. C.* 324 Mass. 758. The executor has filed, however, with the Probate Court a petition under G. L. (Ter. Ed.) c. 204, §§ 13, 14, seeking permission to compromise, notwithstanding the express power to do so given by the will. After hearing evidence with respect to this petition, the probate judge has found as a fact in effect that the executor's recommendation with respect to the proposed compromise was formulated with reasonable prudence (see Restatement: Trusts, § 192), thus satisfying the requirements of proper fiduciary conduct which would exist, if there were no express power in the will allowing the executor to make compromises. See *Kinion* v. *Riley,* 310 Mass. 338, 340.

The probate judge's findings were fully justified by the evidence, which is reported. He heard the testimony of the various witnesses and, as was said in *Bohaker* v. *Koudelka,* 333 Mass. 139, 141, it "is only in very clear and exceptional

---

[1] See also Loring, Trustee's Handbook (Shattuck rev.) §§ 33, 47; Bogert, Trusts and Trustees, § 592, at pages 55–58.

cases — and this is not one of them — that this court will revise the findings of a trial judge based on conflicting oral testimony." The evidence supported the probate judge's finding that a gift to Mrs. Goldman of the insurance business had been made during or prior to January, 1955, not only in the form of statements of the testator showing donative intent, but by a continuous course of conduct in 1954 and 1955 showing the testator's relinquishment of control of the business to Mrs. Goldman after training her to take it over. Although there was no document or bill of sale, signed by the testator, transferring the business to Mrs. Goldman, the aggregate of the circumstances was sufficient to justify the probate judge in concluding that the business "had become the sole property of Mrs. Rose Goldman." See *Millett* v. *Temple*, 280 Mass. 543, 551–552; *Iantosca* v. *Iantosca*, 324 Mass. 316, 322–323. See also G. L. (Ter. Ed.) c. 209, § 3. Compare *Kobrosky* v. *Crystal*, 332 Mass. 452, 460.

To approve the compromise, however, the probate judge did not need to find that the gift in fact had been made. It was sufficient if he found that the executor had made a reasonable investigation of the matter in good faith and that, in the light of the facts disclosed by the investigation and at the trial, it was in the best interest of the estate to approve the compromise. On this record there can be no doubt whatsoever that the executor, through counsel, made a careful investigation. We think also that the probate judge correctly decided that the compromise was prudent.

2. Various rulings on the admission and exclusion of evidence must be considered. The appellants made only general objections and do not appear to have requested that any of this evidence, if admissible only for a particular purpose, be limited to that purpose. See *Solomon* v. *Dabrowski*, 295 Mass. 358, 359–360; *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 468, and cases cited.

The probate judge admitted in evidence (a) the report of an accountant retained by the executor to investigate the insurance business, (b) testimony of a vice-president of

the bank which was the executor, as to its investigations, (c) the report of a second accountant who investigated the insurance business, (d) correspondence between the executor and counsel objecting to the compromise with respect to the available evidence on the issue of ownership of the insurance business and requesting objecting counsel to submit any data or evidence on the issue which they cared to submit; (e) oral testimony that objecting counsel and his client furnished no such data or evidence; and (f) testimony by a representative of the executor with respect to Mrs. Goldman's claim to own the business made to him immediately after the testator's death. This evidence (although some of it might not have been admissible to prove the facts contained in the particular statements or documents) was all admissible on the issue of the executor's diligence and good faith and as showing the investigations made, and the knowledge which the executor had or used, as a basis for its recommendation of compromise. See *Runels* v. *Lowell Sun Co.* 318 Mass. 466, 470–471. The report of the second accountant was later supported by his own testimony.

Similarly, the trial judge admitted in evidence copies of certain statements of persons having knowledge of the operation of the insurance business conducted by Mrs. Goldman in 1955. These reports were obtained by counsel retained by the executor to make an investigation and were turned over to an officer of the executor in connection with his report. The signers of the statements were in the court room and counsel for the executor brought this fact to the attention of the judge and opposing counsel. The probate judge in admitting the statements commented that the executor "took its action presumably on the basis of such information as it received" and properly admitted the statements for the purpose of showing what information the executor had as a basis of its decision.

The probate judge admitted testimony of a representative of the executor (a) with respect to various hypotheses considered and calculations made in behalf of the executor

while considering the compromise, and (b) that the insurance business, in his opinion, would not have value to the executor without the customer's list to which Mrs. Goldman would be entitled under the terms of the antenuptial agreement.  The probate judge also refused to strike from the record an expression of opinion by another representative that the testator did not own the business at his death.  The reasons entertained by the executor (and conclusions of fact reached by it) in recommending a compromise were relevant to the probate judge's consideration of the executor's good faith (which had been questioned) with reference to its recommendations of the compromise.  The objections advanced to this testimony, at most, go to its weight.  The probate judge appears to have used this testimony only as showing what the executor regarded as relevant considerations in passing upon the compromise.

The attorney who drew the antenuptial agreement and the will, called by the appellants, was asked whether the testator ever "express[ed] . . . that he had made a transfer . . . of his insurance business to his wife."  The question was excluded on objection that this related to a privileged communication and that the executor did not waive the privilege.  No offer of proof, or mention of the possible applicability of *Phillips* v. *Chase,* 201 Mass. 444, 449, was made.  There was no effort to place the trial judge "in a position where he could gain a view of the precise issues involved."  See *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 401.  On this record enough does not appear to show that the exclusion was prejudicial.  See *Commonwealth* v. *Doyle,* 323 Mass. 633, 636; *Commonwealth* v. *Granito,* 326 Mass. 494, 497; *Donahue* v. *Kenney,* 330 Mass. 9, 13; *Perry* v. *Carter,* 332 Mass. 508, 513.

5. Counsel for the executor has filed a motion that costs and expenses of this appeal, including counsel fees, be awarded to the executor to be paid by the appellants under G. L. (Ter. Ed.) c. 215, § 45, as an exercise of the discretion of this court in that respect.  See *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge,* 285 Mass. 146, 150–

151. Little justification existed for bringing this long record here for review. The effect of allowing such costs will be to relieve the estate of, and to charge to two of its principal beneficiaries, the cost of printing the long record and briefs. If these beneficiaries shared equally there would be little purpose in such action. However, Sarah Goldman, the incompetent, takes priority over her sister Mrs. Edelstein under the residuary article. It is Sarah's representatives, not Sarah herself, who are responsible for this appeal, and the incompetent sister should not suffer by reason of the unnecessary appeal of Mrs. Edelstein in her own right and as conservator of her sister's estate. Costs and expenses of this appeal are to be allowed, in the discretion of the Probate Court under § 45, to the executor, to be paid by the appellants.

6. The interlocutory decrees denying (a) a motion for an order directing the executor to seek an amendment to the decree allowing the will and (b) a motion to direct the amendment of the inventory and the final decrees dismissing the petition for the removal of the executor and for an accounting and allowing the petition for compromise, together with the interlocutory decrees or orders allowing motions for the entry of such final decrees, are severally affirmed, with costs of this appeal to be allowed as set forth in paragraph 5 of this opinion.

*So ordered.*