LAWRENCE E. CORCORAN, administrator, *vs.*
WILLIAM E. THOMAS.

Middlesex.    February 16, 1978. — March 29, 1978.

Present: GRANT, ARMSTRONG, & BROWN, JJ.

*Executor and Administrator*, Accounts, Compensation, Attorney. *Probate Court*, Accounts, Judicial discretion. *Attorney at Law.*

A probate judge was within the bounds of discretion vested in him by
G. L. c. 206, § 16, in allowing to the administrator of an estate a fee
of $2,000, amounting approximately to eight per cent of the estate,
for legal services and services as administrator. [191–192]

An administrator of an estate who sells real property without employing a real estate broker is not entitled to a broker's commission at
the generally prevailing rate, but only to reasonable compensation
for services actually performed in connection with the sale. [192–
193]

Where on appeal from the allowance of an administrator's account the
record did not make clear whether whatever actual services the
administrator may have rendered in finding a purchaser for certain
real estate were included in the hourly tabulation on which he was
allowed compensation, the administrator was given leave to move
in the Probate Court to reopen the account as to his compensation.
[193–194]

PETITION for administration filed in the Probate Court
for the county of Middlesex on April 13, 1970.

A proceeding for the allowance of an account was heard
by *Perera, J.*

*Lawrence E. Corcoran* for the plaintiff.
*Maurice H. Kramer* for the defendant.

ARMSTRONG, J. The plaintiff was appointed administrator of an estate after the decedent's sons, William E. and
James D. Thomas, were unable to agree on a proper disposition of assets. The principal assets of the estate were a

house, apparently subject to a small mortgage, and its furnishings.[1] The plaintiff arranged an amicable division of the furnishings between the brothers and sold the house for $30,000 to a buyer found by himself. He rendered legal services in connection with the administration of the estate, the sale of the house, and the defense of an action brought by William against the estate for services to the decedent — an action later discontinued.

For the legal services mentioned and his services as administrator, the judge allowed the plaintiff a fee of $2,000. We have considered the several objections to that amount, and conclude that it lay well within the bounds of discretion vested in the probate judge by G. L. c. 206, § 16. Compare *Smith* v. *Smith*, 5 Mass. App. Ct. 874 (1977), and cases cited. We reject the contention of William's counsel that compensation amounting to eight per cent, roughly, of the estate included in the probate inventory is excessive as matter of law.[2] There is nothing in *Swift* v. *Hiscock*, 344 Mass. 691 (1962), to support the contention; *Culhane* v. *Foley*, 305 Mass. 542 (1940), is an example to the contrary. The size of the estate is one factor to be considered; others include "the marketable nature of the assets, the factual and legal questions involved in its administration, the time reasonably re-

---

[1] Also included in the estate for tax purposes was a joint savings account of $7,504 standing in the names of the decedent and William. William objected to the plaintiff's payment of an inheritance tax thereon. An auditor appointed under Rule 22 of the Probate Courts (1959) found that the tax had been correctly assessed and paid, and the point is no longer contested.

[2] We also reject his utterly disingenuous contention, derived from cases where the hours claimed to have been spent were high in relation to the fee ultimately allowed, that the plaintiff's compensation should be limited as matter of law to $7.00 or $8.00 per hour.

quired for completing the work, the skill and ability employed, the amounts usually paid others for similar work, and the results accomplished . . . ." *McMahon* v. *Krapf*, 323 Mass. 118, 123 (1948). *Paone* v. *Gerrig*, 362 Mass. 757, 763 (1973).

The judge disallowed the plaintiff's additional charge of a broker's commission of $1,000 on the sale of the house. The ruling was correct; a charge for services which the plaintiff may have performed as broker was objectionable in the form presented.[3] So far as the commission represented compensation for actual services rendered, "it [was] indefinite and . . . should be made definite and explained so that it may appear that necessary and proper services were rendered, commensurate with the charges made therefor." *Blake* v. *Pegram*, 101 Mass. 592, 600 (1869). "The court does not regulate the compensation of its officers upon the basis of a fixed compensation upon the amount of money passing through their hands, but allows them such an amount as would be reasonable for the services required of and rendered by a person of ordinary ability, and competent for such duties and services." *O'Riorden, petitioner*, 244 Mass. 472, 477 (1923), quoting from *Grant* v. *Bryant*, 101 Mass. 567, 570 (1869).

The record leaves us uncertain whether the judge premised his ruling on that ground or on another ground, said to be suggested by *Montaquila* v. *Montaquila*, 85 R.I. 447, 452–453 (1957),[4] that a fiduciary is not to be allowed

---

[3] The record does not support the plaintiff's contention that William agreed to the commission, and such an agreement would not be conclusive in any event. *Taylor* v. *Trefrey*, 282 Mass. 555, 557 (1933).

[4] The *Montaquila* case concerned an unusual situation in which trustees, charged with the operation of a land development business, employed one of their number as a salesman or broker to handle sales of parcels on a regular basis. It was held (correctly, we think) that it was a conflict of interest for the trustees thus to benefit one of their number and for one serving as trustee to have a personal interest in the sale of lands comprising the trust property. See also *In re Lundberg's Will*, 197 N.Y.S.2d 871 (Sur. Ct. 1960), and *Lefkowitz* v. *Arizona Trust Co.*, 10 Ariz. App. 415, 417–418 (1969).

any compensation for services such as a real estate broker would perform. It is clear that the latter is not the law of this Commonwealth. "The only rule of law is that a [fiduciary] is to receive a just and reasonable compensation for all services performed in the execution of his trust. . . . Everything that a [fiduciary] does rightly and properly is to be paid for, [but] nothing is to be given as a commission except for services actually rendered, and as a measure of reasonable compensation for the service." *Parker* v. *Hill*, 185 Mass. 14, 15, 17 (1904). To the same effect, see Restatement (Second) of Trusts § 242, Comment d (1959), 3 Scott, Trusts § 242.2 (3d ed. 1967), and Newhall, Settlement of Estates § 420, at 44 (4th ed. 1958).

Generally prevailing commissions of real estate agents should be regarded as affording little, if any, guidance in determining what is reasonable compensation for a fiduciary who sells real estate without employing the services of a real estate broker. "The [fiduciary] is not as of right entitled to any particular compensation. It is conceivable that in the sale of real estate no effort whatever may be involved and a [fiduciary] under those circumstances, acting in his individual capacity as realtor, certainly would not be entitled to extra or additional compensation. The amount of the commission depends upon the facts in each individual case and its allowance is within the sound judicial discretion of the court . . . ." *Estate of Wichman*, 27 Haw. 780, 788 (1924). Furthermore, a contrary rule would encourage fiduciaries not possessing the particular qualifications of real estate brokers to undertake tasks for which they lack the skill and expertise to ensure proper performance.

It is not clear from the record whether whatever actual services the plaintiff may have rendered in finding a purchaser for the house were included in the hourly tabulation on which he was allowed compensation of $2,000. If there were additional services not included therein, but only reflected in the disallowed commission, we think he should have an opportunity to establish what those serv-

ices were in order that he may receive reasonable compensation for them. Compare *Blake* v. *Pegram*, 109 Mass. 541, 545 (1872). Following the disposition in *Parker* v. *Hill, supra* at 17, the judgment of the Probate Court will be affirmed unless within forty days after the date of this decision a motion is made by the plaintiff, in the Probate Court, that the account be reopened as to his compensation for all services. If such a motion is made, the case will stand for a further hearing in the Probate Court.

*So ordered.*