RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, executor, & others *vs.* PAUL J. BURNS, administrator.

Suffolk. March 12, 1981. — July 10, 1981.

Present: HALE, C.J., BROWN, & KASS, JJ.

*Executor and Administrator*, Accounts, Compensation, Attorney. *Probate Court*, Accounts, Judicial discretion. *Attorney at Law*. *Contract*, Implied, Personal services.

In a proceeding on an administrator's account, the judge was warranted in disallowing a payment made in settlement of a claim against the estate for services allegedly rendered by the claimant to the decedent during his lifetime where the administrator adduced insufficient evidence as to the value of the claimant's services and where the negotiation meetings leading to the settlement had been "tainted" by the presence and participation of an interested third party who stood to gain a significant financial benefit both from the claimant, if she were successful, and from the estate. [255-257]

In a proceeding on an administrator's account, it was incorrect for the judge to disallow the entire amount awarded by the administrator to a law firm for its services in connection with the settlement of a claim for services allegedly rendered by the claimant to the decedent during his lifetime, on the basis that the negotiations leading to the settlement had been "tainted" by the presence and participation of an interested third party, where the judge made no findings that the administrator was aware of, or had a duty to inquire into, conflicting financial arrangements between the third party and the attorney representing the claimant. [257-258]

In a proceeding on an administrator's account, there was ample evidence to support the judge's finding that the administrator was not entitled to any compensation for his services because of his neglect and maladministration of the estate. [258-259]

CIVIL ACTION commenced in the Probate Court for the county of Suffolk on October 11, 1977.

The case was heard by *Yasi*, J.

*Samuel J. Armstrong (Karen J. Bloom* with him) for the defendant.

*Robert J. Muldoon, Jr. (Elizabeth A. Zeldin* with him) for the plaintiffs.

BROWN, J. The defendant Paul J. Burns, administrator, appeals from a judgment entered in a Probate Court refusing to allow or reducing the amount to be allowed for certain payments made by him for fees and services and surcharging him on his bond in the amount of $261,453.38. The Probate Court judge found that Burns was "so negligent in the administration of the [intestate's] estate . . . as to have caused substantial losses to the estate and inordinate delays in the administration thereof."

We summarize the pertinent facts. On June 26, 1969, Maurice P. Shedd died intestate, leaving an estate valued at over $800,000.00. Grace L. Kempton (Kempton), a resident in an apartment in the home of Attorney Eugene Sullivan (E. Sullivan), had been an acquaintance of the decedent for over twenty years. Following Shedd's demise, Kempton approached Mr. E. Sullivan in regard to a possible claim against the estate. Mr. E. Sullivan referred Kempton to another attorney, Mr. George Mahoney, who in turn agreed to pay Mr. E. Sullivan a fee for the referral. Thereafter, on July 29, 1970, Mr. Mahoney, on behalf of Kempton, commenced an action against the defendant administrator in quantum meruit for services rendered by her to Shedd during his lifetime.[1] In the meantime, on the suggestion of Mr. E. Sullivan, the defendant, a public administrator,[2] had applied for and secured appointment as administrator of Shedd's estate. The defendant and Mr. E. Sullivan agreed to share equally all fees derived from such

---

[1] It was alleged that for twenty years, Grace Kempton, who was employed at a Howard Johnson restaurant in the Dorchester section of Boston, had breakfast and lunch with Shedd almost every day that she worked. She had dinner with him as well, seven nights a week. Over the years they developed a close and constant relationship. They comforted each other when sick, and travelled together. The record, however, was carefully constructed so as to negate any inference of sexual intercourse between Kempton and the decedent.

[2] See G. L. c. 194, § 1. See also G. L. c. 193, § 1.

administration. The defendant later retained Mr. E. Sullivan "to prepare state and federal tax returns and to advise him on the tax consequences of any settlement of the Kempton claim." At this juncture in the chronology, neither the defendant nor Mr. Mahoney was aware that the other had a financial arrangement with Mr. E. Sullivan.[3] The defendant also retained the services of Mr. J. Sullivan of the law firm of DiMento and Sullivan[4] to defend against the Kempton claim. DiMento and Sullivan were paid $22,500 for these services. Sometime later, Mr. Benjamin Stein (Stein), a lawyer who earlier had done some genealogical investigation for the estate, was retained to correct errors in the estate tax return which had been prepared by Mr. E. Sullivan, to examine the tax consequences of any proposed settlement of the Kempton claim, and to handle all other estate tax matters. The defendant paid Mr. Stein $15,000 for performing tax services in connection with the Kempton settlement and for "correcting and concluding the tax work performed by E. Sullivan." (Stein was also paid $2,250 by DiMento and Sullivan "for services rendered them in their defense of the action.")

Several meetings were held between Mr. Burns, Mr. J. Sullivan, and Mr. Mahoney for purposes of negotiating a settlement of the Kempton claim. Mr. E. Sullivan attended some or all of these meetings. At all times Mr. E. Sullivan, when present at these meetings, appeared on behalf of the

---

[3] Although a contrary inference could fairly be drawn from the evidence, we adopt the defendant's view here because for present purposes our decision does not hinge on either view. The Probate Court found, however, that a "[c]ursory investigation would have or should have disclosed the existence of the relationship between E. Sullivan and the claimant." If, on remand, the judge should find that the defendant knew of Mr. E. Sullivan's fee arrangement with Mr. Mahoney, it would be open to the judge to consider whether in such circumstances liability should attach to the defendant for the portion of the DiMento and Sullivan legal fee (see discussion, infra at 257-258) which would otherwise be properly chargeable to the estate.

[4] The DiMento & Sullivan firm has no relationship with E. Sullivan.

estate.[5]  Mr. William Monahan, an attorney representing the heirs, actively participated in these negotiations.  A compromise settlement was reached in the amount of $135,000, and a judgment approving this settlement was entered in the Probate Court.  (Some time after the claim had been settled, Mr. Monahan died.)  However, that judgment was later vacated because of improper service on the heirs.  The defendant did not appeal.  For the legal services performed in negotiating the Kempton settlement, Mr. Mahoney received a fee of $45,000, from which and pursuant to the referral agreement, Mr. E. Sullivan was paid one-half.[6]  On April 19, 1977, the defendant filed his first accounting, which was challenged by four of seven heirs of Shedd who had, following Mr. Monahan's death, obtained successor counsel.

This case is governed by Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), which states in pertinent part that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses."  See also Mass.R.Civ. P. 72(b), 371 Mass. 912 (1977).  For cases which describe the application of that standard, see *Building Insp. of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977); *Nickerson* v. *Fiduciary Trust Co.*, 6 Mass. App. Ct. 317, 318 (1978).

With respect to expenses, costs and fees, G. L. c. 206, § 16, establishes that their allowance rests to a large extent in the discretion of the Probate Court judge.  *McMahon* v. *Krapf*, 323 Mass. 118, 123 (1948).  *Corcoran* v. *Thomas*, 6 Mass. App. Ct. 190, 191 (1978).  See also *Paone* v. *Gerrig*, 362 Mass. 757, 763 (1973).  "[T]he award . . . may be pre-

---

[5] The judge specifically found that Mr. Mahoney knew that Mr. E. Sullivan, the person with whom he had agreed to share any legal fee received, "was representing the administrator [defendant] and estate at conferences relative to settling the [Kempton] claim."

[6] We intend no comment here as to the propriety of this referral fee arrangement, apart from Mr. E. Sullivan's conflict of interest in this case. See S.J.C. Rule 3:22, DR 2-107[A][1], 359 Mass. 808 (1972).

sumed to be right and ordinarily ought not to be disturbed."
*Smith* v. *Smith*, 361 Mass. 733, 738 (1972), quoting from
*Old Colony Trust Co.* v. *Third Universalist Soc.*, 285 Mass.
146, 151 (1934). Conversely, the decision to disallow such
expenditures is also within the judge's discretion, and,
unless clearly erroneous, ought not be disturbed. See *Old
Colony Trust Co.* v. *Third Universalist Soc.*, *supra*. See
also *McMahon* v. *Krapf*, *supra* at 122; *Chase* v. *Pevear*, 383
Mass. 350, 374 (1981).

The dispute centers on the correct burden of proof and
whether that burden has been satisfied. It is settled that in
a probate proceeding the burden of proof "is on the ac-
countant, after he has admitted the relation and the receipt
of a certain sum, to prove that he has disposed properly of
the amount for which he is accountable, and to show what
that amount is." *First Natl. Bank* v. *Brink*, 372 Mass. 257,
264 (1977), quoting from *Pappathanos* v. *Coakley*, 263
Mass. 401, 408 (1928). See also Restatement (Second) of
Agency § 399 & Comment e (1957).

1. *Kempton claim.* The burden of proof placed upon
the accountant in justifying the estate disbursements was
not satisfied in this instance. Contrast *Kinion* v. *Riley*, 310
Mass. 338, 340 (1941). The judge made extensive findings
concerning each of five challenged items of the defendant's
accounting. In reaching his conclusion that the Kempton
settlement should be disallowed the judge weighed the lack
of evidence presented establishing the value of Kempton's
services[7] to the decedent, the dual role played by Mr. E.
Sullivan leading to the initiation of that claim, and the
tainting effect Mr. E. Sullivan's "presence and participation
. . . at settlement conferences" had in reaching the final
compromise. We think that in the aggregate of the circum-

---

[7] A plausible and rather persuasive argument can be made that the
services Kempton claims to have performed for Shedd (see note 1, *supra*)
are not of the kind which traditionally in circumstances such as the pres-
ent have been viewed as compensable. See, e.g., *Green* v. *Richmond*,
369 Mass. 47, 49 (1975); *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 29-30
(1980).

stances the judge was justified in disallowing this disbursement.

The defendant's contention that he needs merely to show that he exercised "sound judgment and reasonable skill and discretion in the discharge of [his] duties," *Kinion* v. *Riley, supra* at 341, is ill founded. Once payment has been made, the fiduciary administering the estate must justify the basis for the disbursement, especially in circumstances like the present where there have been allegations of impropriety on his part. For without that, the soundness of his judgment cannot be determined. Compare *Jones* v. *Jones,* 297 Mass. 198, 207 (1937). In so doing, the accountant should be afforded the opportunity to establish what the services were in order to justify the amount of the payment. Compare *Blake* v. *Pegram,* 109 Mass. 541, 555 (1872). The defendant was afforded such an opportunity. The record, however, shows that he failed to convince the judge. Although it is not essential that a person making a claim against an estate testify, see *Edelstein* v. *Old Colony Trust Co.,* 336 Mass. 659, 664 (1958), in the peculiar circumstances presented here the judge could have given weight to the fact that there was no testimony from Kempton in support of her claim.[8] While there was some evidence that the payment to Kempton was made in good faith, compare *id.* at 663 (absence of bad faith or fraud prerequisite to a compromise of a claim), the judge made no such finding. The judge found that the evidence adduced to place a fair value on the claim was no more than "mere arbitrary conjectures." We cannot say that this finding is clearly erroneous within the meaning of Mass.R.Civ.P. 52(a).

Moreover, the burden here is even heavier, as the record reflects that the compromise settlement meetings were attended by an interested third party, Mr. E. Sullivan. Not

---

[8] There was a striking contrast between the abundance of direct testimony by Mr. J. Sullivan and Mr. Stein, regarding their respective services to the estate, and the total lack of testimony on the part of Kempton regarding the nature and extent of the services she rendered to the decedent.

only was Mr. E. Sullivan instrumental in encouraging Kempton to pursue her claim against the Shedd estate, for which he was performing the tax work, albeit negligently, but he was also deriving a significant financial benefit from Kempton (through Mr. Mahoney) as well as from the estate. Although the judge, in disallowing the $135,000 settlement of the Kempton claim, stopped short of finding bad faith, we think that he was warranted in finding that these proceedings were "tainted" by Mr. E. Sullivan's "presence and participation."

2. *DiMento and Sullivan fee.* We think that the judge may have improperly disallowed the entire amount awarded by the defendant to the firm of DiMento and Sullivan for its legal services in connection with the compromise of the Kempton claim. The judge disallowed the $22,500 legal fee "in part as excessive and in part because of the taint" attached to the involvement of Mr. E. Sullivan. Notwithstanding the judge's finding that the defendant "occupies space in . . . [DiMento and Sulivan's] offices," there was no evidence that DiMento and Sullivan were aware of the financial relationship between Mr. E. Sullivan and the defendant or of the fee-sharing arrangement which Mr. E. Sullivan had with Kempton's attorney. Nor was there any evidence that Mr. E. Sullivan influenced Mr. J. Sullivan in any way to settle the Kempton claim.[9] Although the judge could properly have reduced the legal fee as excessive (see *Smith* v. *Smith,* 5 Mass. App. Ct. 874 [1977]), we think that it was incorrect for him, in the absence of adequate and appropriate findings as to the defendant's awareness of, or duty to inquire into, the "E. Sullivan-Mahoney" connection (see notes 3 and 9, *supra*), to reduce it based on the so called "taint" of Mr. E. Sullivan. As the judge made no allocation with respect to the amounts attributable to the respective

---

[9] Of course, as suggested in note 3, *supra,* what (and when) the defendant knew about Mr. E. Sullivan's fee arrangement with Mr. Mahoney is most relevant in these circumstances.

factors, this branch of the case must be remanded for a new hearing in order to determine the proper legal fee, if any.[10]

3. *Administrator's fee.* General Laws c. 206, § 16, as appearing in St. 1949, c. 140, provides that the administrator "shall have such compensation for services as the court may allow." Although an administrator is entitled to compensation if he has performed services which are of value to or have benefited persons interested in the decedent's estate, see *Brackett* v. *Fuller*, 279 Mass. 62, 72 (1932), "[u]nder the statute [such] compensation is not an absolute right but is within the discretion of the court to a large extent, and it may be wholly disallowed." *Moulton* v. *Thompson*, 291 Mass. 308, 311 (1935). See *Sullivan* v. *Sullivan*, 335 Mass. 268, 279-280 (1957). After hearing all the evidence, the judge determined that the defendant deserved no compensation because he was "so negligent in the administration of the estate and in his dealings with Mr. E. Sullivan as to have caused substantial losses to the estate." Compare *Spilios* v. *Papps*, 292 Mass. 145, 147 (1935). Based on our examination of the findings of fact and the evidence, we think that this finding is neither clearly erroneous nor tainted by error of law.

The defendant "is not entitled to compensation for services rendered which were unnecessary." *McMahon* v. *Krapf*, 323 Mass. at 123. It can reasonably be inferred that some of the services rendered by the defendant and his agents were duplicative, as well as incompetently rendered. For our purposes, however, it suffices to say here, that, aside from the defendant's grossly improper fee-splitting arrangement with Mr. E. Sullivan, in violation of his fiduciary duty of loyalty, there is ample evidence to support the finding that the defendant through neglect and maladministration has forfeited any right he had to compensation.

---

[10] If the judge determines that a fee should be allowed, he is to be guided by the factors set out in *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933), in determining the amount. See also *McInerney* v. *Massasoit Greyhound Assn.*, 359 Mass. 339, 354 (1971).

Cf. *Little* v. *Phipps*, 208 Mass. 331, 333-334 (1911). See also Newhall, Settlement of Estates § 279, at 214 (4th ed. 1958).

4. *Other issues.* We do not need to discuss the disallowance of two thirds of Mr. Stein's fee or the overpayment of estate tax, as the defendant has not argued these two issues within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

5. *Disposition.* The judgment is to be modified by striking the portion disallowing the legal fee awarded DiMento and Sullivan, and that item is remanded to the Probate Court for reconsideration in light of this opinion. The judgment is otherwise affirmed. Costs and expenses are to be in the discretion of the Probate Court.

*So ordered.*